## In re DURBAND.

### No. 2912.

District Court, N. D. Iowa, Western Division.

Aug. 13, 1934.

T. E. Diamond, of Sheldon, Iowa, for petitioner.

Robert P. Munger and Fred H. Free, both of Sioux City, Iowa, for bankrupt.

OTIS, District Judge.

This is a petition to review an order of a referee in bankruptcy setting aside certain of the bankrupt's property as exempt from administration by the bankruptcy court. The question presented for decision is whether chapter 177 of the Laws of the Forty-Fifth General Assembly of the State of Iowa, purporting to increase the exemptions of debtors from general executions and on account of which the order of the referee was made, violates section 10 of article 1 of the Federal Constitution, which prohibits enactment by the states of laws impairing the obligations of contracts.

The bankrupt in this case, a farmer, a resident of Iowa, the head of a family, on his voluntary petition was adjudicated a bankrupt September 7, 1933. Certain personal property belonging to him was set apart by the trustee in bankruptcy as exempt to the bankrupt. The property so set apart was that exempted under the laws of Iowa prior to the enactment of chapter 177 by the Forty-Fifth General Assembly. Thereafter the bankrupt sought to have additional property set apart as exempt in accordance with the last-mentioned enactment of the Iowa Legislature. The referee has in part sustained the bankrupt's petition, and has set apart as exempt various additional articles of personal property. The trustee seeks to have this or-

der of the referee reviewed on the ground that chapter 177 violates the Federal Constitution.

The statute under review here purports to exempt from execution property of a debtor of the value of $500 in addition to property exempted under previously existing law. It appears from the face of the statute that it is intended to protect residents of Iowa, if they are heads of families, not only from executions on account of debts contracted after the effective date of the statute (in which respect its validity is unquestioned), but also as to debts contracted before that date. As to the latter the protection from execution given by the statute is thus qualified: First, it expires March 1, 1935; second, it does not affect executions and attachments already levied when the statute went into effect; third, it does not affect remedies on obligations existing on the effective date of the statute against property of the debtor owned by him on that date.

I consider this statute first as if it had none of the qualifications just stated, that is, as if it merely and without qualification raised a debtor's exemptions in the amount of $500, granting such increased exemptions as to pre-existing obligations. I consider this statute also for the present as if the law was as declared in decisions of the Supreme Court before the decision of that court in Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481. So considered, this statute necessarily would be held to violate section 10 of article 1 of the Federal Constitution.

Section 10 of article 1 provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts. * * * "

In Edwards v. Kearzey, 96 U. S. 595, 607, 24 L. Ed. 793, where the identical question was presented to the Supreme Court, that court decided that a state law (in that case it was a state constitutional provision) which materially increased exemptions violated section 10 and was void in so far as it purported to affect pre-existing obligations. In its opinion the court said: "The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is, therefore, void."

The court said also: "It is to be understood that the encroachment thus denounced must be material. If it be not material, it will be regarded as of no account."

The opinion in Edwards v. Kearzey would seem to leave open as to any state statute the question as to whether an increase in exemptions granted by it is such a material increase as substantially to impair the obligations of pre-existing contracts. Speaking of this (and other decisions) it is said in Corpus Juris that: "The result of the authorities seems to be that each case will be considered on its own merits, and the validity of each statute will be made to depend on whether or not it materially increases the exemption allowed by the law in force when the prior contract was made." 12 Corpus Juris, 1076. A careful reading of Edwards v. Kearzey, however, discloses that in view of the Supreme Court any increase in exemptions is material unless it is such as falls within the meaning of the maxim, "De minimis non curat lex." The court said in this connection, discussing obiter dictum of Chief Justice Taney in Bronson v. Kinzie, 1 How. 311, 11 L. Ed. 143, touching possibly valid increases in exemptions: "The learned Chief Justice seems to have had in his mind the maxim 'de minimis,' etc. Upon no other ground can any exemption be justified."

The statute attacked in this case increases the exemption of a debtor by making property of the value of $500 exempt in addition to what already was exempt from execution. In the previous state of the law (see Code Iowa 1931, § 11760), the exemptions were as to specified items of property such as wearing apparel, certain domestic animals, household furniture, necessary provisions for six months, etc. While the value of such exempted property would vary from time to time and cannot exactly be stated as of any time, it could hardly exceed at a most liberal estimate the sum of $1,000. An increase over this maximum of $500 (a 50 per cent. increase in any possible case and a much larger percentage of increase in the usual and average case) cannot possibly be said to be an increase which is not material, and certainly cannot be said to be one covered by the maxim "de minimus."

If then Edwards v. Kearzey should still be followed (and it has never been expressly overruled), the statute here under consideration must be held to be invalid as against obligations of contracts pre-existing its enactment, unless it is saved by one or more of the qualifications included in it. Of these we are not concerned with the second, that the statute does not apply to executions and attach-

ments levied at the time of the statute's effective date, since there is nothing of that kind in this case.

The third of the qualifications in the statute, that it shall not effect the remedies for existing obligations as against property now in existence, does not save it. As long ago as Sturges v. Crowninshield, 4 Wheat. 122, 198, 4 L. Ed. 529, it was said by the Supreme Court, through Chief Justice Marshall: "It has been contended, that as a contract can only bind a man to pay to the full extent of his property, it is an implied condition that he may be discharged on surrendering the whole of it. But it is not true that the parties have in view only the property in possession when the contract is formed, or that its obligation does not extend to future acquisitions. Industry, talents, and integrity, constitute a fund which is as confidently trusted as property itself. Future acquisitions are, therefore, liable for contracts; and to release them from this liability impairs their obligation."

There is left for consideration the first of the qualifications included in the statute, that it shall be effective only to March 1, 1935. The debtor may hold until that date the additional property made exempt from execution. He may hold it unconditionally. He may sell it and use the proceeds. The property itself may be consumed or wasted. When March 1, 1935, has arrived, it is entirely possible that nothing of this property will be left out of which now existing obligations can be satisfied. Moreover, in the interim the debtor may incur additional obligations so that present creditors, even if their claims are not discharged entirely through the debtor's release from them by an order in bankruptcy, will have lost much of the value of their remedy in being compelled to share it with others. These considerations compel the conclusion that the mere fact that the increase in exemptions granted by this statute is for a limited time only does not save the statute from that real and substantial impairment of the obligations of contracts which the Constitution prohibits.

 In all that has thus far been said I have considered the law as it had been declared by the Supreme Court before the recent decision in the case of Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481.

While the Blaisdell Case concerned a statute conditionally extending the time within which certain real estate mortgages might be foreclosed, notwithstanding their terms, and while it did not have to do with a statute increasing the exemptions of debtors, what was said in the opinion clearly indicates a considerable development in the views of the Supreme Court concerning the power of a state generally so to legislate as seemingly to affect, incidentally at least, the obligations of contracts. The basis of the decision is that all contracts are made subject to the police power of the state so long as that power is not exercised as entirely to deny a remedy for breach of contract or to so embarrass the remedy as seriously to impair rights arising under the contract. This conception was expressed by the court with direct reference to the decision in Edwards v. Kearzey, and suggests that the rule of that case would not now be followed especially with reference to a state statute only temporarily increasing the exemptions of debtors.

The statute here, like the statute considered in the Blaisdell Case, is emergency legislation. It is not in so many words so declared in the statute, but the statute has in it clear indicia of that fact. Moreover, judicial notice may be taken of the economic conditions out of which it came. It was intended as a measure of temporary relief to great numbers overwhelmed by debts and distressed by the depression. Within the principles of law announced in the Blaisdell Case, it must be held to be valid exercise of the police power of the state notwithstanding a contrary result would follow from a consideration alone of the earlier decisions. It is not for this court to question the accuracy of the principles last stated by the Supreme Court (that was done adequately enough by the minority of that court)'; it is for this court only to follow those principles wherever they apply.

The petition of the trustee to review the order of the referee in bankruptcy granting in part the application of the bankrupt for additional exemptions, and the exceptions of the trustee to that order have been duly considered by the court, and, the court being fully advised in the premises, are by the court overruled. The order of the referee granting the additional exemptions is sustained and approved.

It is so ordered.