**In re Joel Francis PUNKE, Debtor.**

**Bankruptcy No. 86–02077M.**

**Contested No. 1882.**

United States Bankruptcy Court, N.D. Iowa.

Jan. 16, 1987.

---

John S. Mackey of Nelsen & Mackey, Mason City, Iowa, for debtor.

J. Mathew Anderson of Lair, Burington, Heiny, McManigal, Walters & Winga, Ma-

son City, Iowa, for Hawkeye Bank & Trust of Mason City, Iowa.

Dennis Patrick Moriarty of Jaspers, Moriarty and Walburg, P.A., Shakopee, Minn., for First State Bank of Freeborn, Minnesota.

Larry S. Eide, Mason City, Iowa, Trustee.

*Findings of Fact, Conclusions of Law, and ORDERS re Debtor's Claim of Exemptions and Motion to Avoid Lien*

MICHAEL J. MELLOY, Bankruptcy Judge.

The matters before the court are Joel Francis Punke's (Debtor) claim of exemptions and his motion to avoid the liens of Hawkeye Bank & Trust of Mason City, Iowa, and First State Bank of Freeborn, Minnesota (Banks) on property claimed exempt. The court, being fully advised, makes the following Findings of Fact, Conclusions of Law and Order pursuant to F.R.B.P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O).

## FINDINGS OF FACT

The facts in this case are cited pursuant to a written stipulation signed by all parties and filed with this court on December 30, 1986.

The stipulated facts show that Debtor in this case filed his Chapter 7 petition on September 15, 1986. Schedule B-4 of the petition included "farm machinery" valued at $8,100.00. Debtor subsequently filed a motion to avoid the nonpurchase money, nonpossessory liens of Banks in that farm equipment. Banks filed timely objections to the claimed exemptions and objections to the lien avoidance action.

The parties do not dispute the valuation placed upon the equipment by Debtor. The parties stipulate the property is tools of the

trade of Debtor and that Banks hold nonpurchase money, nonpossessory liens. The stipulated facts also show that all of the relevant transactions, including the signing of security agreements, filing of financing statements and the disbursement of loan proceeds occurred subsequent to October 1, 1979, the effective date of the 1978 Bankruptcy Code, and prior to May 31, 1986. The security agreements grant as security for Banks' loans corporate stock, livestock, motor vehicles, crops and other farm products which are not claimed to be subject to lien avoidance, as well as the machinery and equipment which is at issue in this proceeding.

The Iowa Legislature amended the Iowa exemptions statute in 1986. That amendment had the effect of increasing the exemption for farm machinery and equipment from $5,000.00 per individual to $10,000.00 per individual. That amendment to the Iowa exemptions statute became effective on May 31, 1986.

The parties have stipulated that the sole issue for determination in this case is what effect the amendment to the Iowa exemptions statute has upon security agreements entered into prior to the effective date of the new statute in those bankruptcy cases filed after the effective date of the statutory change.

## DISCUSSION

There are two matters to be resolved in this case: the validity of Debtor's claim of exemptions and his corresponding request to avoid the liens on exempt property. More specifically, the basic exemption issue is whether an individual debtor is entitled to claim property valued at $10,000.00 pursuant to the 1986 amendment to Iowa Code § 627.6 [1] which took effect before the bankruptcy petition was filed but after the obli-

---

**1.** If the debtor is engaged in farming and does not exercise the delay of the enforceability of a deficiency judgment or general execution under section 654.6 in relation to the execution under which the exemption is claimed, any combination of the following, not to exceed a value of ten thousand dollars in the aggregate:

a. Implements and equipment reasonably related to a normal farming operation. This exemption is in addition to a motor vehicle held exempt under subsection 10.
b. Livestock and feed for the livestock reasonably related to a normal farming operation. Iowa Code Section 627.6(12)(a), (b), 1986 Iowa Legis. Serv. 17 (West).

gations to the affected creditors arose. If Debtor can claim the increased exemption value, the inquiry advances to whether there are any statutory or constitutional barriers to allowing him to avoid liens in the higher amount. Debtor contends that, pursuant to general rule, the applicable exemption statute is that in effect at the time he filed his bankruptcy petition. Banks counter that determining the dollar value of Debtor's exemption rights on the date the petition was filed rather than the date the debt was incurred, and allowing Debtor to avoid Banks' liens to that extent pursuant to § 522(f) violates the Contract Clause of the United States Constitution and constitutes an illegal taking of property in violation of the Fifth Amendment Due Process Clause.

### I. *Contract Clause*

■ Debtor is correct in stating that, as a general rule, a bankruptcy court faced with a debtor's claim of exemptions will apply the law in effect on the date the bankruptcy petition is filed. *See, e.g., In the Matter of Zahn*, 605 F.2d 323, 327 (7th Cir.1979), *cert. den.* 444 U.S. 1075, 100 S.Ct. 1022, 62 L.Ed.2d 757 (1980). *In re Hockinson*, 60 B.R. 250 (Bkrtcy.N.D.Ill. 1986), a case almost identical to the one at bar, followed the general rule expressed in *Zahn*. The Illinois exemption statute was amended increasing the maximum homestead exemption allowed an individual debtor from $5,000.00 to $7,500.00. The amendment went into effect after the bank made the loan to the debtor but before the bankruptcy petition was filed. Citing *Zahn*, the bankruptcy court allowed the debtor's claim for the higher amount and restated the general rule that exemption rights are determined as of the filing date. *Hockinson*, 60 B.R. at 253–254. Iowa Code § 627.6, as amended, is not contradictory; rather, the express language of the amendment provides that: "this act, being deemed of immediate importance, takes effect from and after its publication ... but not later than July 1, 1986." 1986 Iowa Legis.Serv. 21 (West).

■ This rule of law will stand unless it is found to be unconstitutional in its appli-

cation. Banks contend that applying the rule to the case at bar violates the Contract Clause of the United States Constitution which provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts ..." Art. I, § 10. As the parties complaining of unconstitutionality, Banks have the burden of proof. *National Railroad Passenger Corp. v. Atchison, Topeka and Santa Fe Railway Co.*, 470 U.S. 451, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985).

The Supreme Court of the United States has written a relatively long line of decisions interpreting the Contract Clause. While early decisions implemented a strict interpretation, more recent cases have developed a more liberal test making it more difficult to find a constitutional violation. *Edwards v. Kearzey*, 96 U.S. (6 Otto) 595, 24 L.Ed. 793 (1877) is one of the cases most often cited in support of the older, stricter view. It held that a state law or state constitutional provision which materially increased exemptions violated § 10 and was therefore void as purporting to affect pre-existing contractual obligations. 96 U.S. (6 Otto) at 607. On the question of materiality, the Court established a firm stance: "An increase appears to be 'material' if it is not 'de minimus'." *See, also, In re Durband*, 8 F.Supp. 63, (N.D.Iowa 1934).

While *Edwards* and the cases it derived from have never been expressly overruled, *see Bronson v. Kinzie*, 42 U.S. (1 How.) 311, 11 L.Ed. 143 (1843), *Gunn v. Barry*, 82 U.S. (15 Wall.) 610, 21 L.Ed. 212 (1872) modern decisions have cast considerable doubt on the continued viability of the old view. Probably the first case to adopt a more liberal interpretation of the Contract Clause was *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). *Blaisdell* involved a Contract Clause attack against a Minnesota mortgage moratorium statute. The law was enacted during the Depression to provide temporary emergency relief for homeowners threatened with foreclosure. The Court upheld the law in an opinion which provided a detailed analysis and interpretation of the Contract Clause.

While the Court's analysis in *Blaisdell* somewhat loosened the prior straight-jacketed approach taken by *Edwards, et al.*, it did not release all restrictions on state impairment of private contracts in the guise of public emergencies. *See, e.g., W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934) (Arkansas law exempting proceeds of life insurance policy from collection by beneficiary's creditors was struck down under the Contract Clause because it was not exactly tailored to meet a serious social emergency).

More recent Supreme Court cases have adopted the more analytical *Blaisdell* approach to the Contract Clause issue. "Whether the state law has, in fact, operated as a substantial impairment of a contractual relationship," is merely the threshold inquiry. *Energy Reserves Group, Inc. v. Kansas Power and Light*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), *citing Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978). If a substantial impairment is found, the court must then go on to carefully scrutinize the nature and purposes of the state law. *Allied Structural Steel*, 438 U.S. at 245, 98 S.Ct. at 2723. Specifically, the state must be able to justify the regulation by pointing to a significant and legitimate public purpose underlying it. *Energy Reserves Group, Inc.*, 459 U.S. at 411, 103 S.Ct. at 704. This insures that the state is properly exercising its police power. *Id.* at 412, 103 S.Ct. at 705. A statute purporting to deal with a broad economic or social problem, for example, would probably satisfy the legitimate public purpose requirement. *Id.* The court must next determine whether the law is reasonable and necessary to accomplish the identified public purpose. *Id., see United States Trust Co. v. New Jersey*, 431 U.S. 1, 22–23, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977).

The threshold question in this court's analysis is whether the amendment increasing the amount of Debtor's exemptions as of the date he filed his petition constitutes a substantial impairment of the contractual relationship between Debtor and Banks. This is not a situation where the new law attempts to regulate an area not already subject to state intervention. The Iowa exemption statute has been in effect with its language remaining essentially unchanged for well over 100 years. *See, Matter of Hahn*, 5 B.R. 242, 244 (Bkrtcy.S.D.Iowa 1980). Moreover, until the law was amended in 1981, a debtor was entitled to exempt, without regard to value, "the proper tools, instruments, or books of the debtor, if a farmer, mechanic, surveyor, professional engineer, architect, clergyman, lawyer, physician, dentist, teacher or professor." Iowa Code § 627.6(17). The 1981 amendment effected the first significant change in Iowa Code § 627.6. A debtor claiming general exemptions pursuant to § 627.6 was limited under the amended statute to:

> Any combination of the following, not to exceed a value of $5,000.00 in the aggregate:
>
> > (d) if the debtor is engaged in farming, a team consisting of not more than two horses or mules or two yokes of cattle, and the wagon or other vehicle, with the proper harness or tackle, or other necessary implements of husbandry, or a combination of these.

Iowa Code Section 627.6(10)(d).

In effect, prior to 1981 a creditor was on notice that certain property subject to his security interest was potentially exempt to the full extent of its value in the event that the creditor's lendee subsequently filed bankruptcy. This situation was changed following the decision of *Matter of Hahn*, by the Iowa Legislature in 1981 when the $5,000.00 limits were established, and again in 1986 when the limits were raised to $10,000.00. Left unchanged, however, were the basic purposes underlying the Iowa exemption law and the principle of liberal construction given it.

Iowa exemption laws are primarily intended for the support and protection of a debtor and his family. *Schooley v. Schooley*, 184 Iowa 835, 169 N.W. 56 (1917). There are five basic purposes behind the statute: (1) to enable the debtor to survive financially; (2) to protect his dignity and

the integrity of his cultural heritage and religious beliefs; (3) to help effect financial rehabilitation; (4) to support the debtor's family; and (5) to impose the burden of the debtor's support on his creditors rather than on society. *Hahn,* at 244. To further these purposes, the statute must be liberally construed in favor of the debtor. *Bevan v. Hayden,* 13 Iowa 122, 125 (1862), *Frudden Lumber Co. v. Clifton,* 183 N.W.2d 201, 203 (Iowa 1971).

In view of the history behind the Iowa exemption regulation, this court cannot say that Banks' reasonable expectations have been substantially impaired. *See, Energy Reserves Group, Inc.,* 459 U.S. at 416, 103 S.Ct. at 707. "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject matter." *Hudson Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908).

█ Even if the exemption law could be found to impair Banks' contractual interests with Debtor, the amendment to Iowa Code § 627.6 was enacted in response to and is justified by a legitimate public purpose. According to the Legislative Findings expressed in Section 1 of Senate File 2270, 71st Gen.Assem., 1986:

The General Assembly finds and declares as follows:

1. The state of Iowa is suffering from a financial crisis in agriculture that affects the entire economic health of this state.

2. This financial crisis has grown to include the business communities which, together with the agricultural producers, form the core of the state's economy.

3. A large number of producers and farm families are being forced to leave farming and make a new start.

4. It is deemed to be in the best interest of the state to protect the business communities and the dislocated farm families affected by the financial crisis in agriculture.

Clearly the state of Iowa may exercise its police power to deal with the existing farm crisis. The question simply remains whether the means chosen by the legislature is reasonable and necessary to justify the end.

The means chosen by the state to further the identified public purpose, the remedying of the farm crisis, need not constitute a temporary measure (in the sense that the law would revert to its former status) in order to be upheld as reasonable and necessary. *Energy Reserves Group, Inc.,* 459 U.S. at 412, 103 S.Ct. at 705. The economic situation at hand may call for future upward adjustment. Mindful of the purposes behind the exemption statute, the legislature has attempted to more closely coordinate the value of a debtor's farm equipment with rising market price levels. Inflation is an economic reality; as long as it continues, the legislature has a legitimate interest in making corresponding reforms to outdated and unrealistic state laws. The reasonable expectations of creditors are realized, not disturbed, by the increased statutory exemption. *See Energy Reserves Group, Inc.,* 459 U.S. at 416, 103 S.Ct. at 707. This court cannot find that the 1986 amendment to Iowa Code § 627.6 is an unreasonable or unnecessary exercise of the state's police power, especially in view of the deference it should properly award to the judgment of the legislature. *Id.* at 413, 103 S.Ct. at 705. In so finding, this court is in agreement with numerous other bankruptcy courts that have addressed precisely this issue. *See, e.g., In re Barnhart,* 47 B.R. 277 (Bkrtcy.N.D.Texas 1985), *In re Eldridge,* 22 B.R. 218 (Bkrtcy.D.Maine 1982), *In re Ageton,* 6 B.R. 727 (Bkrtcy.D.Ariz.1980). *Contra, Matter of Echavarren,* 2 B.R. 215 (Bkrtcy.D.Idaho 1980).

II. *Fifth Amendment Taking Clause*

The second issue before this court is whether allowing Debtor to avoid the lien in his exempt property to the full extent of $10,000.00 allowed under the 1986 amendment to Iowa Code § 627.6 violates the Fifth Amendment. In essence, Banks argue that allowing Debtor to take advantage of the higher value with respect to liens incurred before the new exemption

law took effect constitutes a retrospective application of § 522(f) and an unconstitutional "taking" of property without just compensation. *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) has been cited for support. *See also, In re Sticha*, 60 B.R. 717 (Bkrtcy.D.Minn.1986).

*Security Industrial Bank* dealt with the then newly enacted § 522(f)(2) in its application to liens on exempt household items incurred prior to the statute's effective date. The Court held, without addressing any constitutional question, that Congress did not intend § 522(f)(2) to be applied retrospectively to avoid pre-enactment lien rights. *See also Matter of Gifford*, 688 F.2d 447 (7th Cir.1982) (Application of § 522(f) to pre-enactment security interests did not violate Fifth Amendment taking clause).

The case at bar is distinguishable from *Security Industrial Bank* on one principal ground. That case dealt with the retrospective application of newly enacted § 522(f). The situation before this court, in contrast, involves the application of § 522 as it existed, manifestly unchanged, prior to the incurrence of Debtor's obligation to Banks. Therefore, the retroactivity analysis of *Security Industrial Bank* is inapposite. No harm is done to the general principle of statutory construction that "no bankruptcy law shall be construed to eliminate property rights which existed *before the law was enacted* in the absence of an explicit command from Congress." Section 522 was already in effect at the time Banks' property rights were created. *Id.* 459 U.S. at 81, 103 S.Ct. at 414 (emphasis added). *See, In re Sticha*, 60 B.R. 717, 719 (Bkrtcy.D.Minn.1986).

Although the Court's decision in *Security Industrial Bank* did not rest on the constitutional issue, its expansive dicta on the subject provides valuable guidance to this court. The Court noted that the power of bankruptcy courts is subject to the constitutional prohibition against the taking of private property without just compensation. *Security Industrial Bank*, 459 U.S. at 75, 103 S.Ct. at 410. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S.

555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935). There is no question that the lien at issue constitutes "property" within the context of the Fifth Amendment. *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568–1569, 4 L.Ed.2d 1554 (1960). Equally clear is the principle that the constitutional takings analysis is not limited to "outright acquisitions" of property by the State. *Security Industrial Bank*, 459 U.S. at 77, 103 S.Ct. at 412.

The first step in the analysis is to determine, in fact, whether any property rights have been taken from the creditors involved in this case. Accordingly, this court must first ascertain the exact status of Banks' rights before the amendment to Iowa Code § 627.6 took effect.

Pursuant to 11 U.S.C. Section 522(b)(1), the state of Iowa has "opted out" of the federal bankruptcy exemption scheme. Therefore, a debtor in Iowa is entitled to claim exemptions according to the Iowa law in effect on the date he files his bankruptcy petition. The same statute entitles the debtor to "avoid the fixing of a lien on an interest of the debtor on property to the extent that such lien impairs an exemption to which the debtor [is] entitled...." 11 U.S.C. § 522(f).

■ As previously discussed in this opinion, at the time Debtor filed his petition in bankruptcy, he was entitled to claim exemptions not exceeding $10,000.00 in value pursuant to Iowa Code § 627.6. At the time Debtor incurred his obligation to Banks, however, he was limited under § 627.6 to $5,000.00. Accordingly, the 1986 amendment to § 627.6 effectively denies Banks $5,000.00 of the value of each of their liens. This in itself does not necessarily constitute an illegal Fifth Amendment taking, however. Banks must provide strong evidence that the taking of this right effects a substantial impairment of their security. *Louisville Joint Stock Land Bank*, 295 U.S. at 595, 55 S.Ct. at 866 (1935).

The law is clear that not every governmental action resulting in destruction or injury to private property constitutes a

Fifth Amendment taking. *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960). The property interest impairment resulting from the government action may constitute a "mere consequential incidence" of a valid state regulation rather than rising to the level of a taking requiring just compensation. *Armstrong, id.* at 48, 80 S.Ct. at 1569.

Determining whether there has been an unconstitutional taking of property "is essentially a factual inquiry which nevertheless calls 'as much for the exercise of judgment as for the application of logic.'" *Sadowsky v. City of New York*, 732 F.2d 312 (2d Cir.1984) (quoting *Andrus v. Allard*, 444 U.S. 51, 65, 100 S.Ct. 318, 327, 65 L.Ed.2d 210 (1979)). In other words, since there is no exact rule to govern the situation, the court must balance the public and private interests affected by the state regulation. *Sadowsky, id.*

This court is not faced with a situation involving the "total destruction" by the state "of all the value" of the liens at stake. *Armstrong*, 364 U.S. at 48, 80 S.Ct. at 1568. Although it has a direct impact on the rights of both debtors and creditors under § 522(f), the increased state exemption allowance neither creates nor destroys those rights. It attempts merely to strike a balance between them (by increasing the value of one interest and decreasing the value of the other) to more closely align them with modern economic reality.

■ The investment expectations of the parties at the time the loan is made is a prime consideration in determining whether there is an unconstitutional taking. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). *See also, Rogers*, "The Impairment of Secured Creditor's Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause", 96 *Harv.L.Rev.*, 973 (1985). ("... the core of the analysis of the constitutionality of retroactive legislation should be the concern with disruption of the settled expectations of private parties.") At the time the loans in issue were made, the parties were aware of the provisions of § 522(f) of the Bankruptcy Code.

■ The parties were also aware that the legislature adjusted the exemptions from time to time, resulting in a corresponding impact upon the § 522(f) lien avoidance. Prior to the 1986 amendment, those adjustments worked to the detriment of debtors and to the benefit of creditors. As previously discussed, the legislature imposed a $5,000.00 limit on farm machinery and equipment in 1981, following the decision of *Hahn*. Also, in 1981, Iowa opted out of the federal exemptions pursuant to 11 U.S.C. § 522(b)(1). Prior to Iowa's opting out of the federal exemptions, a debtor could claim household goods and furnishings exempt in an amount not to exceed $4,000.00 in the aggregate, pursuant to § 522(d)(3). When Iowa opted out of the federal exemptions, that section of the exemptions statute was transferred almost verbatim from the federal exemptions to the new Iowa exemptions, except that the new Iowa law reduced the aggregate limit for household goods and furnishings from $4,000.00 to $2,000.00. *See*, Iowa Code Section 627.6(6). Since household goods and furnishings are subject to § 522(f) lien avoidance, this change had the effect of reducing the amount of property subject to lien avoidance by $2,000.00.

Given the history of the Iowa exemptions statute, this court is not persuaded that secured creditors should not have anticipated the possibility of further periodic adjustments to the exemptions statute.

Even the adjustments made in 1986 do not inevitably work to the creditor's detriment. While it raised the value of a farmer's equipment exemptions, the same 1986 amendment to the Iowa Code imposed a $10,000.00 cap on the value of exempt pigs and their feed. Iowa Code § 627.6(12)(b). Prior to the amendment, a debtor could exempt "*all* pigs under six months of age, together with the feed for *all* exempt animals for six months." (emphasis added). Iowa Code § 627.6(5) (1985).

The impact that the newly amended Iowa exemption law has on the security interests

of creditors pursuant to § 522(f) clearly "arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). This adjustment achieves a balance between the interests of the farmer, the lender and society as a whole. It does not effect an unconstitutional taking of property without just compensation.

## CONCLUSIONS OF LAW

1. Debtor is entitled to claim exemptions pursuant to the Iowa exemption statute in effect on the date he filed his petition in bankruptcy.

2. The application of the 1986 amendments to Iowa Code § 627.6(12)(a) to the security agreements in effect prior to the effective date of that amendment, does not constitute an unconstitutional impairment of contracts nor an unconstitutional taking of property without just compensation.

3. Debtor is entitled to avoid the lien on his exempt property up to the amount of $10,000.00 in accordance with the Iowa exemption law in effect on the date he filed his petition in bankruptcy.

4. The application of § 522(f) to avoid the liens on Debtor's exempt property which were in effect on and before the effective date of the 1986 amendments to Iowa Code § 627.6(12)(a) does not constitute an unconstitutional impairment of contracts nor an unconstitutional taking of property without just compensation.

## ORDERS

IT IS THEREFORE ORDERED that pursuant to the 1986 amendment to Iowa Code Section 627.6(12)(a) Debtor's claim of exemptions is allowed to the extent of the stipulated value of $8,100.00.

IT IS FURTHER ORDERED that pursuant to Section 522(f) Debtor's motion to avoid the liens of Hawkeye Bank & Trust of Mason City, Iowa, and First State Bank of Freeborn, Minnesota on exempt property is granted.