In re Judianne BARTLETT, Debtor.

Judianne BARTLETT, Movant,

v.

John & Gloria GIGUERE, Respondents.

In re Barbara B. COOPER, d/b/a LSP Promotions, Debtor.

Barbara B. COOPER, Movant,

v.

Harold W. BUKER, III, Respondent.

In re Phyllis L. AVERY, Debtor.

Phyllis AVERY, Movant,

v.

PATSY'S INC., Respondent.

In re Richard F. FISHER, Debtor.

Bankruptcy Nos. 93–11392–JEY, 93–10512–JEY, 93–11356–JEY and 93–12943–JEY.

CM Nos. 93–780, 93–810 and 93–975.

United States Bankruptcy Court, D. New Hampshire.

April 22, 1994.

Karyn P. Forbes, Shaheen, Cappiello, Stein & Gordon, Dover, NH, for Phyllis L. Avery.

Diane M. Puckhaber, Rogers & Puckhaber, Concord, NH, for creditor Patsy's Inc.

Dennis Bezanson, Manchester, NH, Trustee, in No. 93–11356–JEY.

Geraldine Karonis, Manchester, NH, Asst. U.S. Trustee, in No. 93–11356–JEY.

Lawrence Sumski, Amherst, NH, Trustee, in No. 93–10512–JEY.

Geraldine Karonis, Manchester, NH, U.S. Trustee, in No. 93–10512–JEY.

Robert M. Koch, Concord, NH, for Barbara B. Cooper.

Michael L. Alfano, Law Office of Rodney L. Stark, Manchester, NH, for Judianne Bartlett.

James LaFrance, Laconia, NH, for creditors John and Gloria Giguere.

Victor Dahar, Manchester, NH, Trustee, in No. 93–11392–JEY.

Geraldine Karonis, Manchester, NH, Asst. U.S. Trustee, in No. 93–11392–JEY.

Peter Shapiro, Tardif, Shapiro & Cassidy, Concord, NH, for Richard F. Fisher.

Arthur W. Perkins, Concord, NH, for creditors Shirley Naqvi.

Richard R. Erricola, Richard Erricola Co., Inc., Sutton, MA, Trustee, in No. 93–12943–JEY.

Geraldine Karonis, Manchester, NH, Asst. U.S. Trustee, in No. 93–12943–JEY.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

These bankruptcy cases present a common issue of whether a debtor may claim the homestead exemption of $30,000 allowed un-

der NH law, N.H. RSA 480:1 (effective January 1, 1993), and avoid liens impairing the exemption claim pursuant to 11 U.S.C. § 522(f)(1), Bankruptcy Rule 4003, and Local Rule 37, when the liens impairing the exemption claim were granted, recorded, and attached at a time when the debtor's homestead was subject to the prior homestead exemption amount of $5,000.

The statute, which is identical to the prior statute except for the higher amount, reads as follows:

> "Every person is entitled to $30,000 worth of his homestead, or of his interest therein, as a homestead. The homestead right created by this chapter shall exist in manufactured housing, as defined by RSA 674:31, which is owned and occupied as a dwelling by the same person but shall not exist in the land upon which the manufactured housing is situated if that land is not also owned by the owner of the manufactured housing."

For the reasons set forth below, the Court concludes that the $30,000 homestead exemption amount that was in effect at the time that each of these debtors filed for bankruptcy relief is applicable.

## FACTS

As indicated above, these cases present a common issue concerning the applicable homestead exemption amount, and with regard to that issue, the following pertinent facts are set forth. Other facts and issues relevant to the individual case will be discussed and ruled upon by separate orders. The common operative fact in these cases is the fact that the homestead exemption amount was higher on the date of the bankruptcy petition than when the lien or judgment attached to the property.

1. Debtor filed a bankruptcy petition under chapter 13 on September 29, 1992, which was dismissed upon the chapter 13 trustee's motion to dismiss on April 16, 1993. Debtor then filed a new bankruptcy petition under chapter 7 on May 11, 1993. The first meeting of creditors in debtor's chapter 7 bankruptcy case was held on June 11, 1993 and, accordingly, any objections to debtor's claimed exemptions were due on or before July 11, 1993. See Bankruptcy Rule

## Judianne Bartlett

Judianne Bartlett filed her chapter 7 bankruptcy petition on May 11, 1993 [1]. Judianne Bartlett owns a mobile home that is located on leased property in Tilton, New Hampshire. On March 5, 1992, the Belknap County Superior Court for the State of New Hampshire granted creditors John and Gloria Giguere an attachment on the Bartlett's mobile home in the amount of $16,264.67, pursuant to a judgment obtained on March 20, 1991, and the attachment was recorded at the Belknap County Registry of Deeds on March 10, 1992. Debtor states that this is the only lien on her home. This matter is before the Court on debtor's motion to avoid that judicial lien.

The current value of Judianne Bartlett's home is $30,000. (See Schedule A–2) Therefore, if the homestead exemption amount of $30,000 is found to be applicable, the Gigueres' judicial lien would impair the exemption and thus would be voidable under the bankruptcy laws, thereby allowing the debtor to retain her home. Conversely, if the $5,000 homestead exemption amount is found to be applicable, the creditors' lien would not impair the exemption and thus would not be voidable under the bankruptcy laws. Under this latter scenario, the debtor would either have to make provisions to pay the attaching creditors directly or suffer the sale of her home to satisfy the creditors' debt to the extent possible after providing for the $5,000 in exemption. The record establishes that the debtor could neither pay the creditors directly nor get financing to do so in terms of the value of the property and her capacity to repay such financing.

The creditors presented three threshold arguments as to why the debtor should not be able to claim a homestead exemption in this case, which have been ruled upon by

4003(b). None were filed. However, debtor filed a Motion to Avoid Judicial Lien on June 4, 1993 to which the Gigueres objected on June 24, 1993, thus obviating the need for the Gigueres to object to her claimed homestead exemption inasmuch as the issue was already before the Court. Accordingly, no issue is presented under the recent ruling of the United States Supreme Court in *Taylor v. Freeland & Kronz*, —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

prior orders or will be addressed by separate order entered contemporaneously this date. Aside from the threshold objections to debtor's claim of exemption, the creditors' primary objection is that the $30,000 homestead exemption does not apply to attachments and other judicial liens existing against real estate prior to January 1, 1993, pursuant to the "strict prohibition against retrospective laws contained in Part 1, Article 23 of the New Hampshire Constitution."

### Barbara Cooper

Barbara Cooper filed her chapter 13 bankruptcy petition on February 26, 1993.[2] Harold W. Buker, III had obtained a judgment for unpaid wages against Barbara Cooper on February 7, 1991, and on December 9, 1991 the parties had entered a voluntary agreement whereby Barbara Cooper gave Mr. Buker a $20,000 attachment on her real estate. (See *Agreement*, State of New Hampshire, Merrimack County Superior Court (J. Hollman) (Dec. 9, 1991) (attached as Exhibit A to Buker's Mem. of Law (Ct. Doc. No. 25)).) In her chapter 13 plan of reorganization, the debtor seeks to avoid Mr. Buker's lien. The only issue presented at this stage of the *Cooper* case is the legal question as to whether her exemption is at the $5,000 or $30,000 level.

### Phyllis Avery

Phyllis Avery filed her chapter 7 bankruptcy petition on May 7, 1993. Debtor owns property located at Forty Acre Field Road, Moultonboro, New Hampshire, in joint tenancy with her husband. On December 3, 1992[3], the Merrimack County Superior Court for the State of New Hampshire

granted creditor Patsy's, Inc. an attachment on debtor's home in the amount of $45,000.00.

The first meeting of creditors was held on June 14, 1993 and, accordingly, any objections to debtor's claimed exemptions were due on or before July 14, 1993. See Bankruptcy Rule 4003(b). None were filed. The debtor filed a Motion to Avoid Judicial Lien on July 19, 1993 to which Patsy's, Inc. objected on August 11, 1993. This case presents a threshold issue[4] of whether respondent's failure to timely object to debtor's claimed exemption is an absolute bar to the disallowance of said exemption under the recent ruling of the United States Supreme Court in *Taylor v. Freeland & Kronz*, — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). *See In re Riso*, BK No. 84–340, slip op. (Bankr. January 14, 1994) (A claim of exemption will be allowed regardless of whether debtor is legally entitled to it if the creditor fails to timely object.) The creditor here however is not contesting the debtor's entitlement to a homestead exemption on the property involved under New Hampshire law, as incorporated by the federal bankruptcy law, but instead defends against the debtor's affirmative attack on the lien in terms of the *amount* of exemption for purposes of exercise of an avoiding power.[5] That issue accordingly is properly before the Court.

### Richard Fisher

Richard Fisher filed his chapter 7 bankruptcy petition on October 18, 1993. Debtor owned property located on Chadwick Hill Road in Boscawen, New Hampshire in joint tenancy with his wife. On March 14, 1991, the Merrimack County Superior Court for the State of New Hampshire granted debt-

---

**2.** The first meeting of creditors was held on June 1, 1993 and, accordingly, any objections to Barbara Cooper's claimed exemptions were due on or before July 1, 1993. See Bankruptcy Rule 4003(b). None were filed. However, debtor filed a Motion to Avoid Judicial Lien on June 14, 1993 to which Harold Buker, III objected on July 10, 1993, thus obviating the need for Mr. Buker to object to her claimed homestead exemption inasmuch as the issue was already before the Court. Accordingly, as in the *Bartlett* case, no issue is presented under the recent ruling of the United States Supreme Court in *Taylor v. Freeland*, supra.

**3.** In her Motion to Avoid Lien, debtor says the lien attached December 3, *1993*, however I believe she meant December 3, *1992*, because debtor's motion to avoid was filed in July of 1993.

**4.** This issue was neither raised or briefed by either party. However, in view of strictness of the *Taylor* decision the Court will consider it.

**5.** Until the debtor sought to actively employ "the sword" of the § 522(f) lien avoiding power there was no issue joined requiring a reaction by the creditor.

or's ex-wife, Shirley Naqvi, an attachment on the property in the amount of $250,000.00, pursuant to a decree of divorce obtained from the Merrimack County Superior Court and a stipulation between the parties entered into on June 29, 1990.

In his bankruptcy schedules debtor lists the property at Chadwick Hill Road and claims a $30,000 exemption pertaining to same. Shirley A. Naqvi filed an Objection to Exempt Property of the debtor on January 18, 1994, to which debtor filed a response. Shirley Naqvi also filed a motion for relief from stay. By Order dated February 15, 1994, this Court (Bankruptcy Judge Vaughn) granted movant's request for relief from the automatic stay to allow movant to sell the property at issue, however Judge Vaughn required her to put $30,000 of sale proceeds in escrow pending a determination of the applicable exemption amount. For the reasons set forth above, with regard to the *Avery* case, the debtor's use here of the "sword" of the avoiding power, raising the issue of the degree of impairment of the creditor's lien, precludes a forfeiture of the creditor's right to defend and question the *amount* of the homestead exemption involved.

### DISCUSSION

Section 522 of the Bankruptcy Code provides in pertinent part that "... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption...." 11 U.S.C. § 522(f). The Bankruptcy Code provides for several exemptions, *see* 11 U.S.C. § 522(d), and allows a debtor to choose the exemptions provided under federal law in the Bankruptcy Code or the alternative exemptions provided for by state law if the state involved has so elected. *See* 11 U.S.C. § 522(b)(2). New Hampshire is an "opt-out" state that has legislated, as authorized by § 522(b)(2), that the § 522(d) exemptions will not apply as to New Hampshire debtors. *See* N.H. RSA 511:2–a.

The exemption provision at issue in these cases, as noted above, provides for exemption of "$30,000 worth of his homestead, or of his interest therein, as a homestead." N.H.

RSA 480:1 (Supp.1993) (eff. Jan. 1, 1993). This homestead exemption had been recently increased to $30,000 from $5,000 per person through legislation that was passed on May 1, 1992, and that became effective on January 1, 1993. (N.H. Laws, 1992, Chapter 118) The homestead exemption in New Hampshire originated through legislation passed in 1851 in the amount of $500 per person. The exemption amount has been increased five times since 1851, as follows:

| Date | Amount |
|------|--------|
| 1851 | $ 500 |
| 1947 | $ 1,000 |
| 1953 | $ 1,500 |
| 1973 | $ 2,500 |
| 1981 | $ 5,000 |
| 1992 | $30,000 |

*See* N.H. Laws, 1851, Chapter 1089:1; N.H. Laws, 1947, Chapter 72:1; N.H. Laws, 1953, Chapter 133:1; N.H. Laws, 1973, Chapter 212:1; N.H. Laws, 1981, Chapter 333:1; and N.H. Laws, 1992, Chapter 118:1.

"It is well established that Debtor's exemptions in a bankruptcy proceeding are to be determined as of the date of the filing of the bankruptcy petition." *In re Eckols,* 63 B.R. 523, 526 (D.N.H.1986), *citing* 3 *Collier on Bankruptcy* 15th Ed. ¶ 522.23 "Homesteads", pp. 522–71 (1986). *See also In re Friedman,* 38 B.R. 275, 276 (Bankr.E.D.Pa. 1984); *In re Kincaid,* 96 B.R. 1014 (BAP 9th Cir.1989); *In re McKeag,* 104 B.R. 160 (Bankr.D.Minn.1989).

■ Bankruptcy is a rehabilitative proceeding, and one of its primary purposes is to give the honest debtor a "fresh start". *See Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (The bankruptcy laws are designed to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh.") This "fresh start" is only feasible if the debtor emerges from bankruptcy with a means of providing the necessities of life, including a roof overhead, and the homestead exemption is directed at making this attainable. The Supreme Court recently stated that "This Court has certainly acknowledged that a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their

affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991), *quoting Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

Towards this rehabilitative end "the Bankruptcy Code generally is to be liberally construed in favor of the debtor." *In re Osborne,* 156 B.R. 188, 190 (Bankr. W.D.Va.1993), *citing Gleason v. Thaw,* 236 U.S. 558, 560, 35 S.Ct. 287, 288, 59 L.Ed. 717 (1915) and *Roberts v. W.P. Ford & Son,* 169 F.2d 151 (4th Cir.1948). Similarly, a remedial law, such as an increase in the homestead exemption, which is designed to implement an important social policy, should be construed in favor of its intended beneficiary, in this instance the debtor. The homestead exemption recognizes an important public policy of ensuring that families have a roof over their heads and that they can be kept off welfare. Accordingly, I believe society would want such law to be implemented as soon as possible. The countervailing issue however, which is the crux of the disputes before this Court, is whether the remedial purpose of the homestead laws, and the periodic changes in the amount of exemption, can be implemented even though it will have an effect on certain pre-existing rights of creditors of the homestead owner.

### Federal or State Law?

The questions before the Court require consideration of yet another threshold issue, i.e., whether it is a *federal* law or a *state* law that is involved. Technically, the exemption in question is created not by the state but by the Congress in enacting § 522 of the Bankruptcy Code. It is true that Congress has in effect legislated that the states may elect to have the exemption defined by their own exemption laws but this is simply an incorporation by reference by the Congress to pick up the terms of any existing exemption laws in "opt-out" states, including any future changes in those laws. Congress has the power to incorporate state laws by reference in this fashion. It has been held that this can even be done with incorporation by reference *in advance* of any future changes in the state laws without constituting an unconstitutional delegation of power by the Congress. *U.S. v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). Accordingly, in my judgment, the exemption right that we are dealing with in these cases is created by federal law, and is a matter of federal law as to applicability, even though the amount and items of exemption are defined and set forth in existing state statutes.

This view does not change the basic questions raised by the challenges to the claims of exemption here at issue but it does indicate that appropriate exemption amount under the Bankruptcy Code can and should be determined in terms of *federal* purposes in the enactment of the bankruptcy laws, although the federal courts certainly should consider state case decisions on the issue, when available, as informative and perhaps persuasive when not in conflict with federal purposes under the bankruptcy law.

### Prospective or Retroactive?

The issue as presented to this Court has been argued in terms of retroactivity, i.e., whether the change in exemption amount can and should be applied retroactively to limit a judicial lien existing before the change to cover value only in excess of the new $30,000 exemption amount.

While that is the way the issue has been argued and briefed by the parties the Court on review of the relevant case law and authorities believes that framing the issue in that matter is essentially an unintentional "red herring"[6] in that under applicable case decisions in this Circuit the application of the new exemption law to bankruptcy cases filed after the enactment of the increased exemption amount is not in fact or law a retroactive application of the exemption statute.

---

**6.** As will be noted later, a lot of other attorneys and courts have swum along with that beguiling and intellectually interesting fish.

While a creditor with an attachment or other judicial lien may well have had an "existing right" ,to move against a debtor's collateral subject only to a $5,000 exemption at the time the non-consensual lien was obtained, that right in my judgment also carried a corresponding obligation to assert and enforce that right promptly under the existing statutory provisions with regard to homestead exemption, in view of the general knowledge that homestead exemption laws are in fact periodically updated and changed in amount as inflation and other economic conditions warrant.[7]

A closely analogous question as to whether a statutory change was being applied prospectively or retroactively was addressed by the Court of Appeals for the First Circuit in the recent decision of *McAndrews v. Fleet Bank*, 989 F.2d 13 (1993). The Court there held that application of a FIRREA federal statutory provision preventing a contracting party from terminating its contract with the Bank upon insolvency or receivership was *not* a retroactive application of the pertinent statutory provision.

The Court in *McAndrews* noted the contention by the lessor that "applying the statute to a preexisting lease containing an ipso facto clause effectively nullifies the clause, therefore constituting an improper retroactive application of the statute...." 989 F.2d at 15. The Court further noted the "settled rule that courts should not apply statutes retroactively when doing so would significantly impair existing substantive rights and, thus, disappoint legitimate expectations." 989 F.2d at 15.

The Court of Appeals in *McAndrews* however rejected the contention that application of the FIRREA provision to nullify the ipso facto clause was in fact a retroactive application of the statute:

> The determination of whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date. Hence, a

statute's application is usually deemed prospective when it implicates conduct occurring on or after the effective date. See *Cox v. Hart*, 260 U.S. 427, 434–35, 43 S.Ct. 154, 156–57, 67 L.Ed. 332 (1922); *EPA v. New Orleans Pub. Serv., Inc.*, 826 F.2d 361, 365 (5th Cir.1987); see also *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100, 1110 (N.D.Ill.1988); *King v. Mordowanec*, 46 F.R.D. 474, 482 (D.R.I.1969). Even when the later-occurring circumstance depends upon the existence of a prior fact, that interdependence, without more, will not transform an otherwise prospective application into a retroactive one.

This means, of course, that a statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle. The key lies in how the law interacts with the facts. So long as a neoteric law determines status solely for the purpose of future matters, its application is deemed prospective. See New Orleans Pub. Serv., 826 F.2d at 365.

Employing these first principles, FIRREA's reach in this case cannot be deemed retroactive. Signing a lease containing an ipso facto clause does not in itself unleash section 1821(e)(12)(A). Only subsequent events can pull the trigger. Here, for example, FIRREA was brought into play through a collocation of circumstances, all occurring well after the law's effective date: the tenant's insolvency, the FDIC's appointment as receiver, and the landlord's attempt to utilize the lease's escape hatch. It follows that, because the conduct triggering the statute's application occurred long after FIRREA's enactment, using section 1821(e) to trump the ipso facto clause constitutes a prospective use of the statute regardless of when the lease was executed.

In reaching its decision in *McAndrews* the Court of Appeals also considered by analogy

---

7. Indeed, with regard to debtor Phyllis Avery, the creditor Patsy's Inc. obtained an attachment on December 3, 1992 while clearly on notice by the May 1, 1992 legislation by the New Hampshire legislature that the exemption amount would increase effective January 1, 1993.

certain provisions of the Bankruptcy Code as follows:

> [W]e find instructive the caselaw construing section 365(e)(1) of the Bankruptcy Code, 11 U.S.C. § 365(e)(1) (1988). Courts have consistently held that section 365, an enactment which renders termination-upon-insolvency clauses unenforceable in bankruptcy, applies to leases predating the Code. See, e.g., *Matter of Triangle Lab., Inc.,* 663 F.2d 463, 467 (3d Cir.1981) (observing that § 365(e)(1) controls "leases ... executed prior to the effective date of the Code" when "the event which trigger[s] the bankruptcy termination clause occur[s] after the effective date of the Code"); *In re Sapolin Paints, Inc.,* 5 B.R. 412, 414–17 (Bankr.E.D.N.Y.1980) (nullifying a termination-upon-bankruptcy clause in a lease that predated the Code where the lessee's insolvency occurred after the Code's effective date). We think the analogy between the concinnous use of Code section 365(e)(1) and FIRREA section 1821(e)(12)(A) is a powerful one.

In my opinion the present cases before this Court present essentially the same question of prospective or retroactive applicability of a statute as was presented in the *McAndrews* case. The creditors in my case all held non-consensual liens which provided a remedy to reach a debtor's collateral *provided that* the creditor acted expeditiously before a "triggering event" occurred that would affect that creditor's rights. One such "trigger" that could and did occur, which is certainly not an unusual event in today's society and economy, was the occurrence of a bankruptcy filing.

Put another way, the creditor's rights in the present case were only "vested rights" to the extent that they were exercised before a subsequent bankruptcy filing would create the power of the debtor to exercise the remedial avoidance provisions of § 522(f)(1) of the Bankruptcy Code to implement their fresh start free of their preexisting debts and encumbrances. Even apart from the situation of a subsequent bankruptcy filing, the so-called "vested right" of the attaching creditor is always subject to the vagaries of an economy which—while it might provide increasing property value of the collateral in question—likewise predictably would produce legislative response to adjust the homestead exemption amount to correspond with such increased property values. The creditors' rights in the present case were not taken away from them by the statute in question but by their own inaction. That being the case, this Court concludes that no retroactive application of the statutory provision in question is presented by the present cases.

### Retroactivity

While the foregoing determinations suffice to support the debtor's avoidance of the nonconsensual liens here involved under § 522(f)(1) of the Bankruptcy Code, the Court nevertheless will consider alternatively (for reasons of judicial economy) the retroactivity question actually briefed and argued in the event of any appeal and reversal of my determination that the statutory provision in question is only prospective in application on these facts.[8]

The legislation amending N.H. RSA 480:1 to increase the homestead exemption to $30,000 is silent as to whether the increased exemption applies retroactively to pre-existing attachments. Thus, a narrower question is whether the state courts would apply the current exemption amount without consideration of the rights and interests of attaching creditors. The debtor here argues that the Court should apply the law in effect at the time debtor filed the bankruptcy petition. But that phrase—"law in effect"—is itself ambiguous: Is the "law" simply what the statute says, or is it what the state courts would have done with the statute under the circumstances of a prior lien that would be affected by the increased exemption amount? Moreover, we have the overriding complexity that it is really a *federal* law that is being applied for federal purposes, as discussed above.

---

8. I also note that most of the case decisions to date on this issue discuss the matter in terms of whether retroactive application of the exemption law is appropriate or not, rather than in terms of whether the statutory application is retroactive at all.

The Constitution of New Hampshire, Part 1, Article 23d, provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." This constitutional prohibition is "'to prevent the legislature from interfering with the expectations of persons as to the legal significance of their actions taken prior to enactment of a law.'" *Iandolo v. Powell,* 134 N.H. 630, 632, 595 A.2d 510 (1991); *Petition of Public Service Co. of NH,* 130 N.H. 265, 280, 539 A.2d 263 (1988), *quoting State v. Vashaw,* 113 N.H. 636, 637–38, 312 A.2d 692 (1973). However, New Hampshire cases interpreting this provision of the Constitution of New Hampshire have held that the proscription against retrospective laws is not implicated and have allowed retroactive application of a law when the law affects only a "remedy" rather than a "substantive right". *See Petition of Markievitz,* 135 N.H. 455, 606 A.2d 800 (1992) (labor department erred in failing to apply amendment to workers' compensation statute that became effective between date of injury and date permanency determined); *Iandolo v. Powell,* 134 N.H. 630, 595 A.2d 510 (1991) (date of insanity plea rather than date of underlying conduct determines whether law is retrospective); and *Gelinas v. Mackey,* 123 N.H. 690, 465 A.2d 498 (1983) (applying higher interest on judgement statute enacted after automobile accident but before judgement).

■ I conclude that under New Hampshire law a creditors' lien interest or right is a "remedy", a means of guaranteeing (or trying to guarantee) that their debt will be paid. It is not a vested, substantive right. The law does not provide that creditors have a vested right to have their debts paid; rather, it provides them with a means—judicial liens and attachments—by which they can try to safeguard the payment of their debt at some point in the future. The judicial lien or attachment mechanism is a remedy provided by state law. Because liens constitute a remedy rather than a substantive right, I believe there is no proscription under New Hampshire law against the retroactive application of the exemption law here in question.

■ To the extent that the exemption law under § 522 of the Bankruptcy Code is in fact a *federal* law, and should be construed in terms of its federal purposes, I note that the recent Supreme Court decision in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), is instructive. In that case a bankruptcy court in Florida had interpreted the homestead exemption as not to apply to liens that had attached before the property had acquired its homestead status. The United States Supreme Court allowed the exemption and held that the debtor was permitted under federal law to set aside the lien of the creditor in property that the State of Florida had specifically excluded from its exemption provision, i.e., property subject to judicial liens.

The debtor in *Owen* had a judgment entered against his property in favor of his ex-wife in the amount of $160,000 recorded in July of 1976. At that time the debtor did not own any property in the relevant county where the attachment was served. Under Florida law however the judgment would attach to any after-acquired property recorded in the county. In 1984 the debtor purchased a condominium in the county and upon that purchase the property became subject to his ex-wife's judgment lien.

One year later Florida amended its homestead law to provide that condominiums such as that owned by the debtor, which previously had not qualified as a homestead, thereafter did. The Florida courts had interpreted their exemption laws as being inapplicable to pre-existing liens, i.e., liens that attached before the property acquired its homestead status. Such pre-existing liens therefore could be asserted against property notwithstanding the homestead exemption under Florida law.

In January of 1986, the debtor filed for bankruptcy under chapter 11 of the Bankruptcy Code and claimed his homestead exemption in his condominium. He also sought to avoid the lien of his ex-wife pursuant to § 522(f)(1) of the Bankruptcy Code.

The creditor in *Owen* argued that the Court need only ask whether the judicial lien impaired the exemption under Florida law. The Court conceded that "it obviously does

not since the Florida homestead exemption is not assertable against pre-existing judicial liens." 500 U.S. at 308, 111 S.Ct. at 1836. Florida is an "opt-out" state in which the Bankruptcy Code incorporates the state exemption provisions. The creditor then argued that to permit avoidance of the lien would not preserve the exemption but would in fact expand it.

The Supreme Court recognized that "at first blush" that seemed to be a reasonable argument but ultimately rejected it and sustained the debtor's position with regard to exercise of the avoidance power concluding as follows:

> On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and State exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.
>
> In the dissent's view, the question is whether the lien impairs an 'exemption to which the debtor would have been entitled at the time the lien "fixed".' [citation omitted]. Under the Code, however, the question is whether the lien impairs an 'exemption to which the debtor would have been entitled under subsection (b),' and under subsection (b), exempt property is determined 'on the date of the filing of the petition,' not when the lien fixed. 11 U.S.C. §§ 522(f), (b)(2)(A). We follow the language of the Code.

*Owen v. Owen,* 500 U.S. at 313–14, 111 S.Ct. at 1838.

The decision in *Owen* emphasizes that while the Bankruptcy Code permits states to opt out of the federal specific statutory exemptions the effect of exemptions and the implementation of § 522(f)(1) avoidance powers will be determined in terms of the federal purposes involved notwithstanding the results that would otherwise be obtained if no bankruptcy had ensued.

The decision in *Owen* therefore supports the emphasis this Court places in the present case on the situation *as it existed* at the date of the bankruptcy filing and supports the determination that even viewed as a federal question of retroactivity the same results should follow, i.e., questions of retroactivity would not prevent application of the *then-existing* $30,000 homestead exemption amount in implementing the § 522(f) avoidance power.

### Due Process/Taking

 To the extent that the issue must be considered in terms of a "retroactive" application of the new exemption statute, which I have rejected above, there would arguably be additional due process considerations in the constitutional sense in so applying the increased exemption amount.

The creditors involved in these cases contend that if the changed exemption law is applied retroactively it will constitute a denial of due process to them under the Fifth and Fourteenth Amendments to the United States Constitution, i.e., a taking without just compensation, since they would be deprived of existing rights that they held prior to the change which had substantial value.

Creditors cite *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) for the proposition that, if possible, courts should construe a statute whose retroactive effect would raise a possible constitutional infirmity so as to avoid the necessity of reaching the constitutional question. In *Security Industrial Bank,* the United States Supreme Court held that an attempted invalidation of liens perfected prior to the passage of the Bankruptcy Reform Act of 1978 was an impermissible retroactive application of the statute as to a case filed after its effective date. Finding "substantial doubt whether the retroactive destruction of the appellees' liens in this case comports with the Fifth Amendment", the Court construed the statute in question, 11 U.S.C. § 522(f)(2), to avoid the constitutional issue by noting:

> Although the 1978 Act, in general, is effective for all cases commenced after its effective date, Congress might have intended that provisions that destroy previously vested property rights apply only to inter-

ests that came into effect after the enactment date.

*Id.* at 79, 103 S.Ct. at 412. The Court held that "[I]n the absence of a clear expression of Congress' intent to apply § 522(f)(2) to property rights established before the enactment date, 'we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guaranties of the' Takings Clause." *Id.* at 82, 103 S.Ct. at 414, *quoting NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 507, 99 S.Ct. 1313, 1321, 59 L.Ed.2d 533 (1979) (footnote omitted).

In the present case before this Court, however, the issue is squarely presented and must be decided, to the extent that my earlier determination that no retroactivity is involved might not be sustained. At least one of these debtors will literally be "out on the street" and lose their home if the $30,000 amount of exemption (which is the amount that debtor paid for a mobile home) is not determined to be retroactive to permit her to remain in that home.[9] While that possible hardship to that debtor is not a basis for deciding the legal issues presented to this case it does indicate why the Court does not believe it has the luxury of avoiding a possible retroactivity determination just to avoid a possible constitutional question.

██ I believe that any impairment of the creditors' liens in these cases by an arguably retroactive application of the amended exemption statute is not unreasonable in light of the important public policy of providing the debtor with a fresh start. *See e.g. Zahn* (7th Cir.) (allowed increase to detriment of lien ($10,000 to $25,000) and has been followed by vast majority of cases in interest of public policy); *see also In re Punke,* 68 B.R. 936 (Bankr.D.Iowa 1987) and *In re Hockinson* 60 B.R. 250 (Bankr.D.Ill.1986) (citing cases from 7th Cir., Bankr.D.Me., Bankr. D.Az., Bankr.D.Ore., and Bankr.D.Ill.) Both

the *Punke* and the *Hockinson* cases allowed higher exemption, and rejected constitutional argument, on the basis of a legitimate public purpose—dignity and welfare of debtor, support of family, fresh start—and on the finding that higher exemption does not substantially impair parties' contractual relationship. These courts also ruled that allowing the higher exemption is not unreasonable or unnecessary for accomplishment of legitimate public purpose. Indeed, a creditor has no vested right that the collateral to which a lien attaches will have equity to pay the lien when and if it is liquidated.

Moreover, it needs to be re-emphasized that these creditors are being deprived of the right and remedy in question by their inaction in expeditiously enforcing that right before the expectable and periodic increase in homestead exemption amounts occurred. While it is true that the most recent change in the New Hampshire exemption law was a substantially higher percentage increase than in prior years a court—unlike a legislature— has no way of drawing a line between percentage increases and exemption amounts that do and do not affect prior judicial liens.[10] The inescapable fact is that nothing in this record indicates that any of these creditors could not have moved to exercise their rights under their judicial liens prior to the enactment or effective date of the increased exemption amount.

The creditors cite passages of dicta in the majority opinion in the *Security Industrial* case which suggested in the context of retroactive application of bankruptcy laws that affect pre-existing rights a possible dichotomy in due process considerations between impairment of *contract* rights as opposed to impairment of vested *property* rights. See *Security Industrial,* 459 U.S. at 75, 103 S.Ct. at 410. In *Security Industrial,* however, the Court was faced with an entirely new law that abrogated pre-existing property rights

---

9. See factual finding at p. 491 above.

10. The decision in *Matter of Echavarren,* 2 B.R. 215 (Bankr.D.Idaho 1980), arguably involved drawing such a line in refusing to implement an exemption level of $25,000 increased from a $10,000 prior level. The decision however was based on a retroactivity conclusion and did not

involve the specific avoiding power considerations under § 522(f)(1) of the present Code since it was decided under the prior Bankruptcy Act. In any event, this Court does not find the *Echavarren* decision persuasive and would not follow it even if it were otherwise a relevant precedent.

of creditors by creating new exemptions and giving debtors the power to void liens impairing those exemptions. Unlike *Security,* in this instance the New Hampshire legislature did not create a new right for debtors, rather it merely increased the debtor's homestead exemption, presumably to comport with current real estate values, as it had on several prior occasions.

It should be noted that while the majority in the *Security Industrial* case did not decide the constitutional issue that would have been presented by a retroactive application of the § 522(f)(2) avoidance power there involved, three concurring justices would have addressed that question. They noted that were they "writing on a clean slate" they would decide the constitutional question in favor of the debtor and against the household furnishings and appliances creditor, for various reasons including "because the exemption provisions in question affect the remedy and not the debt" and "because there is an element of precedent favorable to the debtor to be found in such cases as *Penn Central Transp. Co. v. New York City,* 438 U.S. 104 [98 S.Ct. 2646, 57 L.Ed.2d 631] (1978), and *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980)" 459 U.S. at 84, 103 S.Ct. at 415. The concurring justices however noted that they were *not* writing on a clean slate and that the case of *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914) was on point and could not be distinguished from the *Security Industrial* case. They noted that unless the Supreme Court chose to overrule *Holt v. Henley* that case would control the present case.

It is my view that the Supreme Court *would* overrule *Holt v. Henley* if presented with a situation such as the present case before this Court. I believe that the "remedy/substantive" dichotomy makes considerably more sense in this context, and in a modern economy, than trying to apply constitutional due process considerations mechanically in terms of whether "contract" or "property" rights are involved.

The decision of the Court of Appeals for the First Circuit in *McAndrews, supra,* also involved an analogous contention that application of the FIRREA statutory provision thereinvolved constituted "an unconstitutional taking without compensation analogous to those arising from various proscribed physical invasions." 989 F.2d at 17–18. The Court there noted the factors to be considered in evaluating such a contention:

Three factors that rank paramount in this inquiry are (1) the regulation's "economic impact" on the property owner, (2) the extent to which the regulation interferes with "distinct investment-backed expectations," and (3) the "character" of the interference, that is, whether the governmental action is more akin to a physical invasion or to a necessary readjustment of economic benefits and burdens, *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); accord *Connolly* [*v. Pension Ben. Guar. Corp.*], 475 U.S. [211] at 225, 106 S.Ct. [1018] at 1026 [89 L.Ed.2d 166 (1986)]; *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984).

The Court in *McAndrews* considered the various factors at length and then concluded by focusing on the "reasonable expectation" factor:

Given that the reasonable expectation to which a landlord is entitled is an uninterrupted stream of rent at the contract rate, not the future exercise of a termination-upon-insolvency clause, FIRREA cannot be viewed as interfering with a vested property interest, the usurpation of which would require compensation. *See Penn Cent.,* 438 U.S. at 124–25, 98 S.Ct. at 2659–60 (observing that government actions, even those which "cause[ ] economic harm," cannot be considered takings when they do not "interfere with interests that [are] sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes."). In the last analysis, FIRREA leaves appellant firmly in possession of the essence of that for which he bargained: a fixed rent for a fixed period.

\*　　\*　　\*　　\*　　\*　　\*

In a nutshell, the character of the governmental action strongly favors the appellees' position. The mere fact that future

obeisance to the newly enacted law might cause a property owner, as in this case, to forgo an opportunity for gain is no more than a necessary consequence of FIRREA's regulatory regime. Hence, if there is an invasion of a property right at all, it is a tiny invasion of a lambent right, arising "from a public program that adjusts the benefits and burdens of economic life to promote the common good," *id.* [475 U.S.] at 225, 106 S.Ct. at 1026, and, as such, does not constitute a taking. See *id., accord Andrus [v. Allard]*, 444 U.S. [51] at 65, 100 S.Ct. [318] at 326 [62 L.Ed.2d 210 (1979) ]; *Penn. Cent.*, 438 U.S. at 124, 98 S.Ct. at 2659; *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892–2893, 49 L.Ed.2d 752 (1976); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922).

To sum up, it is simply inherent in the concept of "remedial legislation" that strong public policies are involved and that all citizens are in effect on notice that such remedial laws may, and often are, changed to continue to serve their remedial purposes as economic conditions evolve. In that context, it is not at all convincing that holders of nonconsensual judicial liens should be deemed clothed with inviolable "vested rights" that will preclude the appropriate implementation and the constant updating of the remedial policies involved—being in this case the homestead exemption laws.

The Court therefore concludes that no constitutional violation is presented by the application of the changed exemption amounts, even if this application had to be deemed retroactive in nature, to allow the debtors here involved to avail themselves of the § 522(f)(1) avoiding power against those judicial liens to the full extent of the $30,000 exemption which was in effect at the time they commenced their bankruptcy proceedings.

### CONCLUSION

In accordance with the foregoing, I determine that the applicable homestead exemption amounts in each case is $30,000 per person, the amount in effect at the time these debtors filed their petitions in bankruptcy. Separate Orders in accordance with this Opinion granting the motions to avoid the judicial liens involved will be entered contemporaneously in each case.