**In re John R. FOSSUM and Nancy L. Fossum, Debtors.**

**Bankruptcy Nos. 3–85–1590, 3–85–1850.**

United States Bankruptcy Court, D. Minnesota, Third Division.

April 16, 1986.

Jeffrey Carpenter, Minneapolis, Minn., for John Deere.

James Wiant, St. Cloud, Minn., for Norwest Bank.

Christopher Elliott, St. Paul, Minn., for debtor.

## ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the court upon the motion of debtors to avoid liens on exempt property. Christopher A. Elliott, attorney, appeared on behalf of debtors. James L. Wiant, attorney, appeared on behalf of Norwest Bank Sauk Rapids ("Norwest"). Jeffrey Carpenter, attorney, appeared on behalf of John Deere Credit Company ("John Deere") and Harlan Beck, doing business as Paynesville Implement Company.

John R. Fossum filed a voluntary Chapter 7 petition on July 15, 1985. Nancy L. Fossum filed a voluntary Chapter 7 petition on August 14, 1985. The bankruptcy cases of the above-named debtors have been consolidated pursuant to an order of this court dated October 9, 1985. Prior to the filings of the above-entitled Chapter 7 proceedings, debtors filed a joint petition for reorganization under Chapter 11 of the Bankruptcy Code in December, 1982. Plans of reorganization were submitted during 1983 and a hearing on confirmation of the final plan of reorganization ("plan") was held in April, 1984. Confirmation of the debtors' plan was denied by this court and the Chapter 11 case was dismissed.

During the prior Chapter 11 proceedings, negotiations were entered into by debtors and John Deere with regard to farm equipment in the possession of debtors which had been purchased from Harlan Beck and financed through John Deere. At the commencement of debtors' prior Chapter 11 case in December, 1982, John Deere re-tained a valid, perfected purchase money security interest in the following pieces of equipment:

a) One John Deere 148 Loader purchased from Harlan Beck in approximately November, 1980 for approximately $2,850.00;

b) One John Deere 630 Cultivator purchased from Harlan Beck in approximately July, 1981 for approximately $3,465.00.

As a result of the settlement negotiations between John Deere and debtors, John Deere agreed to the following treatment under debtors' proposed plan in the Chapter 11 case:

This claim will be secured by a security interest in the farm equipment subject to the security interest at the time the case was commenced to the extent of $4,205.00 and should be paid with interest at the rate of 10% per annum (based upon a 365-day year). Payment will be made in the following manner:

a) Interest accruing from and after the effective date through the date of the first payment hereunder together with an amount equal to 30% over the claim will be paid no later than 90 days following the effective date;

b) All accrued and unpaid interest together with an amount equal to 30% of the claim will be paid no later than one year and 90 days following the effective date; and

c) All accrued and unpaid interest together with an amount equal to 40% of the claim will be paid no later than two years and 90 days following the effective date.

In accordance with the provisions set forth in debtors' plan, John Deere revised the original payment schedule for the aforementioned pieces of equipment thereby calling for payment of the unpaid balance then due and owing to John Deere in the amount of $4,205.00 in three annual payments at an annual interest rate of 10%. In addition, John Deere executed "new notes" setting forth the aforementioned agreement reached between the parties. John Deere then voted for acceptance of debtors' plan.

At the subsequent confirmation hearing, the court denied confirmation of debtors' plan and dismissed the case, said dismissal being affirmed by order of the Eighth Circuit Court of Appeals dated June 12, 1985. Debtors then filed the above-captioned Chapter 7 petitions.

Debtors now take the position that John Deere's security interest in the two pieces of farm equipment which existed at the time the Chapter 11 proceedings were commenced are extinguished by the subsequent refinancing, as reflected in the prior Chapter 11 plan, and therefore may be avoided pursuant to 11 U.S.C. § 522(f). In support of this position, debtors point to the fact that the "new notes" included:

1) Capitalization of interest that had accrued prior to the filing of the Chapter 11 case;

2) The combining of the two notes with a readjusted interest rate at 10%; and

3) A three-year extension of the note at the lower interest rate.

Bankruptcy Code § 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien of an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under (B) of this section, if such lien is—

2) A non-possessory, non-purchase money security interest in any

B) Implements, professional books or tools of the trade of the debtor or the trade of a dependent of the debtor ...

At the time debtors filed the original Chapter 11 petition, John Deere held a perfected purchase money security interest in both pieces of farm machinery which are the subject matter of this proceeding, which could not be avoided under § 522(f) of the Bankruptcy Code. The vast majority of the courts that have considered the issue of refinancing of notes involved cases where a new loan was extended and the proceeds used to extinguish or pay off the existing old loan in which the creditor held a purchase money security interest in the collateral securing the loan. Under those circumstances, the prevailing view is the purchase money character of the lien is extinguished since the loan proceeds are not used to acquire rights in the collateral. However, this scenario is not present in the instant case.

■ The relevant question before this court is whether the parties intended to have the original security interest remain in effect or whether they intended to create a totally new debt separate and distinct from the debt owing on the date the Chapter 11 was filed. There is no evidence before this court now nor was there at the time the parties agreed to the treatment expressed in debtors' Chapter 11 plan that they intended to extinguish the old obligations and thereby extinguish John Deere's security interest in the two pieces of farm equipment.

The original value of the two underlying notes has never been paid by debtors nor has any "new money" been advanced by John Deere for the purpose of extinguishing the old notes. The "new notes" were entered into between the parties in good faith in order to allow debtors to obtain confirmation of their Chapter 11 plan. Debtors' plan was not confirmed and they have made no payments to John Deere since the treatment agreed to in the plan was reached by the parties. To allow debtors to now assert that the security interest of John Deere has somehow been extinguished by a subsequent agreement reached between the parties in the context of a Chapter 11 reorganization would be inequitable.

John Deere executed the "new notes" in reliance upon debtors proposing and having confirmed their Chapter 11 plan. Confirmation of debtors' plan having been denied, and it appearing to this court that the underlying basis upon which the "new notes" were issued by John Deere is no longer in existence, the court finds that the security interest of John Deere in the two pieces of equipment remains to the extent that its security interest existed on the date

the original Chapter 11 petition of debtors was filed.

Both John Deere and Norwest have further objected to debtors' motion to avoid liens on farm machinery and equipment asserting that debtors are not "farmers" and therefore are not allowed to claim farm implements as tools of the trade. Norwest has further objected to debtors taking advantage in the change of the dollar amount in the Minnesota exemption statute which allows debtors to claim an exemption in the amount of $10,000.00 in tools of the trade, since the change in dollar amount occurred after the parties entered into the agreements giving rise to Norwest's security interest.

■ Debtors' motion seeks to avoid Norwest's security interest in numerous pieces of farm machinery and equipment as "tools of the trade" pursuant to 11 U.S.C. § 522(f)(2)(B). In *In re Middleton*, 45 B.R. 744 (Bkrtcy.D.Minn.1985), this court determined that in order for a debtor to claim as exempt farm machinery and equipment as "tools of the trade" the debtor must be engaged in farming at the time the exemption is claimed or have a present intent to continue farming at some point in the future. From the evidence presented to this court, the court is satisfied that debtors at all times relevant hereto have attempted to engage in the business of farming and have expressed an intent to continue farming if at all possible in the future, therefore preserving debtors' status as farmers for the purpose of claiming exemptions in farm equipment and machinery. The fact that they have ceased farming for a time due to the economic climate now facing many farmers throughout the United States does not destroy their status as farmers for the purpose of claiming exemptions in this instance.

■ The remaining issue is as to what affect the change in dollar amount under Minn.Stat. § 550.37(5), (6), (7) has with respect to petitions filed prior to the effect of the amendments. At the time debtors filed their Chapter 7 petitions, Minn.Stat. § 550.-37 provided in pertinent part:

(1) The property mentioned in this section is not liable to attachment, garnishment, or sale on any final process, issued from any court.

(6) The tools, implements, machines, instruments, office furniture, stock in trade, and library reasonably necessary in the trade, business, or profession of the debtor, not exceeding $5,000.00 in value.

Both at the time Norwest perfected its security interest in debtors' property, which is the subject matter of this motion, and at the time the above-captioned Chapter 7 proceeding were filed, debtors were limited to an exemption in farm equipment of $5,000.00. Subsequent to the filing of the petition, Minn.Stat. § 550.37 was amended as follows:

(5) Farm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops not exceeding $10,000.00 in value.

(6) The tools, implements, machines, instruments, office furniture, stock in trade, and library reasonably necessary in the trade, business, or profession of the debtor, not exceeding $5,000.00 in value.

(7) The total value of property selected by a debtor pursuant to (5) and (6) shall not exceed $10,000.00.

In accordance with these amended provisions, debtors have taken the position that they are entitled to exempt $10,000.00 worth of farm machinery and equipment. Norwest claims that debtors are not entitled to the $10,000.00 exemption amount under amended Minn.Stat. § 550.37(5), (6), (7) because it was not in effect at the time the debt was incurred, and to allow the statute to be applied retroactively would be in violation of the Impairment of Contracts Clause of the United States Constitution, Article I, Section X.

When the parties entered into the agreement which gave rise to Norwest's security interest, they did so with the knowledge of the law as it then existed. At that time, a farmer/debtor could exempt up to

$5,000.00 worth of farm implements and machinery. The Minnesota Supreme Court in *Dunn v. Stevens*, 62 Minn. 380, 64 N.W. 924 (1895), held that a change in the homestead exemption amount was invalid as respects contracts made before its enactment for the reason that it impairs their obligations by so materially affecting the subsisting remedy as to substantially lessen their value as forbidden by the Constitution.

This court agrees with the analysis of the Minnesota Supreme Court in *Dunn* and finds that a retroactive application of the amended Minn.Stat. § 550.37(5), (6), (7) would so substantially and materially alter the remedy existing for Norwest at the time the contract was made that it would be in violation of both the Impairment to Contracts Clause and Due Process Guarantees of the United States Constitution. Therefore, this court finds that debtors are limited to the $5,000.00 exemption then existing at the time they entered into the contract with Norwest. Therefore, for the reasons stated above,

IT IS HEREBY ORDERED that debtors' motion to avoid liens insofar as it affects the perfected security interest of John Deere Credit Company in the pieces of farm machinery outlined above be and the same is hereby denied.

IT IS FURTHER ORDERED that debtors be allowed to exempt farm machinery and equipment up to $5,000.00 in value.