**In re R. David BETZ Jean S. Betz, Debtors.**

No. 01–43236.

United States Bankruptcy Court, D. Massachusetts.

Feb. 15, 2002.

Richard S. Hackel, Boston, MA, for Debtors.

Stephen E. Shamban, Braintree, MA, for M. Selim Cetiner.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion to Establish Value and Avoid Judicial Liens" ("Motion to Avoid Lien") filed by R. David Betz and Jean S. Betz (the "Debtors"), the debtors in this Chapter 7 case. M. Selim Cetiner ("Cetiner"), as conservator for Nevin Elibol, a creditor holding a judicial lien, has objected to allowance of the Motion (the "Objection"). The dispute arises out of the Debtors' claim to a homestead exemption in their primary residence located in Sudbury, Massachusetts (the "Residence"). Specifically, the parties dispute the amount of the exemption the Debtors may claim in the Residence pursuant to Mass. Gen. Laws Ann. Chap. 188, § 1 (1991 and Supp.2001) (hereinafter M.G.L.A. c. 188, § 1 or the "Homestead Statute"), as amended by the Statutes of 2000 Chap. 174, § 1 (the "Amendment").

The central issue in this case is whether the limitation set forth in § 3 of the Amendment, St.2000 c. 174, § 3 (hereinafter "Section 3"), which increases the dollar amount of the homestead from $100,000 to $300,000 but subordinates the increase to preexisting liens, is inconsistent with the Bankruptcy Code. Also in dispute in this case is whether Cetiner's response objecting to the Debtors' Motion to Avoid Lien satisfies the requirements of Fed. R. Bank. P. 4003(b) ("Rule 4003(b)"). That rule requires that an objection to a debtor's claimed exemptions be filed within 30 days of the conclusion of the § 341(a) meeting of creditors.

For the reasons outlined below, this Court holds that Cetiner's response to the Debtor's Motion satisfies the requirements of Rule 4003(b). This Court also holds that the reasoning of the First Circuit Court of Appeals in *Patriot Portfolio v. Weinstein,* 164 F.3d 677 (1st Cir.1999) extends to Section 3's subordination clause, and the exception to the increased homestead exemption for preexisting liens is thus preempted by § 522(c). Accordingly, the Debtors are entitled to claim an exemption in the Residence in the amount of $300,000 and employ that exemption for the purposes of § 522(f). This Court further holds that retroactive application of the increased exemption amount to Cetiner's lien presents no violation of his constitutionally protected property rights.

### I. Facts and Position of the Parties

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on May 11, 2001. In their schedules, they claimed the state exemptions pursuant to § 522(b)(2). On May 29, 2001, the Debtors filed their Motion to Avoid Lien, claiming an exemption of $300,000 in the Residence. The meeting of creditors under 11 U.S.C. § 341(a) was held and concluded on June 25, 2001. Although Cetiner never filed an objection to the Debtors' claimed exemption as listed in their schedules, he filed a response objecting to the Debtor's Motion to Avoid Lien on June 25th. The deadline to file objections to the Debtors' claimed exemptions was July 24, 2001.

The Debtors assert that Cetiner's lien on the Residence is fully voidable on two grounds. First, the Debtors assert that, as a procedural matter, Cetiner is precluded from raising any objections to their claimed exemption because his failure to file a formal objection as mandated by Rule 4003(b) and *Taylor v. Freeland &*

*Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), precludes him from doing so at this point. The Debtors claim that Rule 4003(b) requires that an independent, formal objection must be filed within the Rule's prescribed deadline.[1] The Debtors further claim that no such formal objection was filed within the deadline and that a response objecting to the Debtors' Motion to Avoid Liens does not satisfy the rule's requirements. As such, Cetiner can no longer raise any objections to the claimed amount of their homestead exemption.

Cetiner disagrees with the Debtors' interpretation of Rule 4003(b). Initially, Cetiner argues that the Objection in and of itself satisfies the requirements of Rule 4003(b). Because this response was filed well within the rule's deadline, he contends that he is not barred from objecting to the claimed $300,000 homestead exemption. Alternatively, he argues that if the Objection does not satisfy the definition of "objection" under Rule 4003(b), then he is still

not precluded from challenging the Debtors' claimed exemption amount because his response to their Motion gave the Debtors timely notice of his objection.

The Debtors' second ground for voiding Cetiner's lien revolves around the interplay between §§ 522(b), (c) and (f) of the Bankruptcy Code. The Code allows a debtor to exempt certain property from the bankruptcy estate. If a state has not opted out of the federal scheme of exemptions, § 522(b) permits the debtor to choose between the federal exemptions outlined in § 522(d) and those exemptions provided under state or local law and other nonbankruptcy federal law. § 522(b)(1)-(2).[2] Massachusetts has not opted out of the federal scheme, so a debtor filing in this state has the option to·choose between these two alternatives. Under § 522(c), the debtor's exempted property is then protected from liability for any pre-petition debts except those specifically outlined in § 522(c)(1)-(3).[3] § 522(c). Debts

1. Fed. R. Bank. P. 4003(b) provides in relevant part:

   A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

2. 11 U.S.C. § 522(b) provides in relevant part:

   Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ...
   (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize, or in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of

this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition ...

3. § 522(c) provides:

   Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except-
   (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;
   (2) a debt secured by a lien that is-
   (A)(1) not voided under subsection (f) or (g) of this section ... and
   (B) a tax lien, notice of which is properly filed.
   (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal

which may encroach upon exempted property, as listed under § 522(c), include debts for certain taxes and custom duties, alimony and child support, and liens that are not void under § 522(f). *Id.* In turn, § 522(f) allows a debtor to avoid a lien on a debtor's property "to the extent that such lien impairs an exemption to which the debtor would have been entitled" under section § 522(b).[4] § 522(f)(1). Section 522(f)(2)(A) sets forth a formula to determine the extent to which a lien impairs an exemption to which the debtor would be entitled under subsection (b).[5]

The Homestead Statute allows a resident of Massachusetts to claim a homestead exemption upon the filing or recording of a homestead declaration, but with certain exceptions.[6] M.G.L.A. c. 188, §§ 1–2, 5. Chapter 174 of the Statutes of 2000 amended the Homestead Statute by increasing the amount of the homestead exemption from $100,000 to $300,000, effective November 2, 2000. St.2000 c. 174, § 1. Section 3 of the 2000 Amendment, however, subordinates the increased exemption to any "lien, right or interest" recorded or filed before the effective date of the Amendment. Section 3 states:

> This act shall apply to declarations of homestead recorded or filed for registration pursuant to section 1 or 1A of chapter 188 of the General Laws before, on, or after the effective date of this act, but the increase in the amount of homestead protection for declarations recorded or filed for registration before the effective date of this act shall not have priority over, and shall be subordinate to, any lien, right or interest recorded or filed for registration before the effective date of this act.

*Id.*, § 3.

Thus, the increase in the amount of the homestead exemption applies to all homestead declarations regardless of when they

---

depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution.

4. § 522(f)(1) states in relevant part:

Notwithstanding any waiver of exemptions ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
(A) a judicial lien, other than a judicial lien that secures a debt-
  (i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child...;
(B) a nonpossessory, nopurchase-money security interest ...

5. 11 U.S.C. § 522(f)(2)(A) provides:

For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of-
(i) the lien,
(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtors could claim if there were no liens on the property exceeds the value of the exemption that the debtor's interest in the property would have in the absence of any liens.

6. M.G.L.A. c. 188, § 1 as amended provides in relevant part:

An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
(2) for a debt contracted prior to the acquisition of said estate of homestead.
In addition, M.G.L.A. c. 188, § 5 provides:
No estate of homestead shall affect a mortgage, lien or other encumbrance previously existing.

were recorded, but to the extent that a lien arose after the date of the declaration of homestead but before the effective date of the statute, Section 3 mandates that the exemption be limited to the pre-amendment amount of $100,000. In effect, Section 3 carves out an exception to the homestead increase for preexisting liens or interests, much like the provisions in M.G.L.A. c. 188, §§ 1 and 5 which were invalidated by *Weinstein*.

The Debtors filed and recorded a declaration of homestead with the Massachusetts Land Registration Office on June 12, 2000. In the Motion to Avoid Lien, the Debtors claim that the value of their residence was $295,500 as of the date of case commencement.[7] The Residence was on that date encumbered by first and second mortgages in the amounts of $92,000 and $36,000, respectively, and by a non-avoidable real estate tax lien held by the Town of Sudbury in the amount of $4,741. Accordingly, as of the date of case commencement, non-avoidable encumbrances totaled $132,741. Cetiner holds a judicial lien in the amount of $500,000, issued by the Massachusetts Superior Court as prejudgment security for a pending personal injury action filed by Cetiner against the Debtors. The writ of attachment was issued and recorded on June 14, 2000, two days after the Debtors filed their declaration of homestead but prior to the effective date of the Amendment.[8]

The continued viability of Cetiner's lien is dependent on the validity of Section 3's subordination clause in this case. Because the Debtors recorded their homestead declaration prior to the Amendment's effective date and because Cetiner's lien was also recorded prior to that date, the $100,000 amount applies unless the Bankruptcy Code preempts Section 3's exception for preexisting liens. If Section 3 is preempted, adding a $300,000 exemption to the other non-avoidable liens totaling $132,741 may invalidate Cetiner's judicial lien of $500,000 in its entirety, given the claimed value of the property.[9]

The Debtors assert that they are entitled to claim the $300,000 homestead exemption notwithstanding Section 3's clear language subordinating the increase to preexisting liens. They claim that the First Circuit's holding in *Weinstein* precludes application of Section 3's limitations in a bankruptcy case. Specifically, *Weinstein* held that § 522(c) prohibits application of state exemption exceptions that are not specifically listed in that subsection. Because § 522(c) does not list an exception for preexisting liens, the First Circuit held that the limitations contained in M.G.L.A. c. 188, §§ 1 and 5 were inapplicable in a bankruptcy case. The Debtors argue that this holding extends to the Amendment's

---

7. Cetiner has not stipulated to that claimed value.

8. This case differs from the facts of *Weinstein* where the judicial lien was recorded prior to the filing of a homestead declaration. *See*

| | |
|---|---|
| Cetiner's judicial lien | |
| All other liens | |
| Amount of Exemption | |
| | |
| Exceeds the value of the debtors' interest in the property by: | |

(Leaving no value for the lien) ($500,000–$637,241)

*Weinstein*, 164 F.3d at 679. *Weinstein's* substantive holding, however, applies to the instant case, as set forth below.

9. The Debtors maintain that the § 522(f)(2)(A) formula should be applied as follows:

$$\begin{array}{r} \$500,000 \\ \$132,741 \\ \underline{\$300,000} \\ \$932,741 \\ -\ \underline{\$295,500} \\ \$637,241 \end{array}$$

restriction on the increase in the amount of the homestead exemption.

Cetiner disagrees. He maintains that "as is its right, the Massachusetts state legislature has determined not only the types of property which may be claimed exempt, but also the amount of the claimed exemption." He further claims that "[i]t has been held in this District and in others that 'bankruptcy courts defer to state law when determining the amount of the allowable state exemption.'" Although Cetiner concedes that under *Weinstein* the states are precluded from adding to the "categories" of debts listed in § 522(c), he maintains that the states are not prohibited from setting "the dollar amount of an exemption, or the conditions attendant to a change in the dollar amount of the claimed exemption." Under this rationale, bankruptcy courts must "first examine the state statute to determine the property which may be exempted and the amount which the Debtors may claim exempt," along with all of their built-in limitations. Accordingly, Cetiner concludes that the amount of the exemption as applicable to his specially protected lien is $100,000.[10] Therefore, even given the Debtors' valuation, his lien would only be partially voided.[11]

## II. Discussion

### A. Requirement of a Formal Objection Under Rule 4003(b)

■ As a threshold matter, the Court holds that Cetiner's failure to file a formal written objection to the Debtors' exemptions does not bar his present objection. Cetiner's response objecting to the Debtors' Motion to Avoid Lien was timely filed, giving the Debtors ample notice of Cetiner's objection to the claimed exemption amount.

■ Section 522(*l*) of the Bankruptcy Code provides that property claimed by a debtor as exempt will be deemed exempt if no timely objections are filed.[12] 11 U.S.C. § 522(*l*). Rule 4003(b) sets the time limit for filing objections to claimed exemptions. Upon the debtor's filing of schedules, an interested party must object to exemptions within 30 days after the meeting of creditors is concluded. Rule 4003(b). In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, the Supreme Court established the bright line rule that unless an objection is timely filed, an ex-

---

10. Cetiner does not deny that the Debtors are entitled to claim the $300,000 homestead exemption as to all other creditors and the Chapter 7 Trustee. He claims that the $100,000 exemption applies specially to him due to his judicial lienor status as outlined in Section 3.

11. Cetiner calculates the extent of the impairment of the Debtors' homestead exemption under § 522(f)(2)(A) as follows:

| | |
|---|---|
| Cetiner's judicial lien | $500,000 |
| All other liens | $132,741 |
| Amount of Exemption | $100,000 |
| | $732,741 |
| Exceeds the value of the debtors' interest in the property would have by: | − $295,500 |
| | $437,241 |

(Leaving a judicial lien of $62,759) ($500,000–$437,241)

12. 11 U.S.C. § 522(*l*) provides in relevant part:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.... Unless a party in

emption is valid even though it may have no legitimate basis. *Taylor,* 503 U.S. at 643–44, 112 S.Ct. 1644.[13] However, *Taylor* did not address the present question of what constitutes a sufficient "objection." Section 522(*l*) of the Code and Rule 4003(b) are also silent on this point. *Applebee v. Brawn,* 138 B.R. 327, 333 n. 29 (Bankr.D.Me.1992) (*In re Brawn*) ("The rules prescribe no form for objections to exemption claims.")

█ Nonetheless, the issue is well-settled. An overwhelming majority of courts have held that, at least in the instance where some form of written objection was manifested within the 30 day deadline, Rule 4003(b) is satisfied even though no formal objection was filed. *See generally,* Kenneth D. Ferguson, *Repose or Not? Informal Objections to Claims of Exemptions After Taylor v. Freeland,* 50 Okla. L.Rev. 45 (1997) (discussing differing rationales used by courts to conclude that failure to file a formal objection does not preclude objection to a § 522(f) or (h) claim). *See also, In re Brawn,* 138 B.R. at 333 n. 29 ("[R]esponse to § 522(f) motion qualifies, in and of itself, as the 'objection' Rule 4003 requires."); *Premier Capital, Inc. v. DeCarolis,* 259 B.R. 467, 471 n. 8 (1st Cir. BAP 2001) (*In re DeCarolis*) (citing to *In re Maylin,* 155 B.R. 605, 613 (Bankr.D.Me.1993)) ("[E]ven if *Taylor* were applicable, 'its rule does not foreclose a secured creditor from defending a § 522(f) or 522(h) action by denying that the property involved is exempt under applicable law.' "); *Spenler v. Siegel,* 212 B.R. 625, 630–31 (9th Cir. BAP 1997) (*In re Spenler*); *In re Harry,* 151 B.R. 735, 738 (Bankr.W.D.Va.1992) (objection in response to the debtor's motion to avoid lien

constitutes sufficient objection under Rule 4003(b)); *In re Young,* 64 B.R. 611, 613 (E.D.La.1986) (trustee's motion to compel debtor's turnover of property was sufficient objection). *But see, In re Snyder,* 215 B.R. 477, 478 (Bankr.W.D.Okla.1997) (response to a motion to avoid lien does not constitute sufficient objection for purposes of Rule 4003(b)).

This Court will follow the majority view and holds that Cetiner's Objection, though not formally styled as an "objection to exemption," comprises a sufficient objection for purposes of Rule 4003(b). To hold otherwise would be to "elevate form over substance." *In re Spenler,* 212 B.R. at 630 (quoting *Young v. Adler,* 806 F.2d 1303, 1305 (5th Cir.1987)). Where, as here, the Debtors had full written notice of Cetiner's intent to object well within the deadline, the purposes of Rule 4003(b) are fully satisfied. As stated by the *Spenler* court, the Debtors cannot "complain that [they] did not have actual notice of [Cetiner's] objection," and accordingly, should not be allowed to "gain refuge behind Rule 4003(b)." *Id.*

**B. Preemption of M.G.L.A. c. 174, § 3's Subordinating Clause**

█ In *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court set forth a three part test to determine § 522(f)'s applicability in avoiding a judicial lien. First, this Court must determine whether the debtor is entitled to an exemption. *David Dorsey Dist. Inc., v. Sanders,* 39 F.3d 258, 261 (10th Cir.1994) (citing to *Owen v. Owen,* 500 U.S. at 312–313, 111 S.Ct. 1833). Second, the Court must determine the extent to which

---

interest objects, the property claimed as exempt on such list is exempt.

13. Although note that the bright line was somewhat befogged by the Court's inability to

determine the impact, if any, of an argument made under 11 U.S.C. 105(a). *Id.* at 645, 112 S.Ct. 1644. *See also Mercer v. Monzack,* 53 F.3d 1 (1st Cir.1995).

the lien may be avoided. *Id.* The third step is to determine whether the lien does, in fact, impair the exemption. *Id.* The issue in this case revolves around the first step. Although it is undisputed that the Debtors are entitled to claim a homestead exemption, the Court must determine the amount of the exemption to which they are entitled. The Court must make this determination in order to determine the extent to which Cetiner's lien may be avoided under § 522(f)(2)(A).

### 1. Analytical Framework

In order to determine the applicable amount of the Debtors' homestead exemption, the interplay between § 522(b), (c) and (f) of the Bankruptcy Code must be analyzed. As Judge Haines noted in *In re Leicht*, the analysis of these code sections presents a "circular conundrum." *In re Leicht*, 222 B.R. 670, 677 (1st Cir. BAP 1998). In this case, the Debtors chose the state exemptions under § 522(b)(2). That section tells us to look to the law that "is applicable on the date of the filing of the petition." The applicable law provides for a homestead exemption of $300,000 (instead of $100,000), unless a preexisting lien or interest is impaired. *Weinstein* holds that § 522(c) invalidates state law exceptions not specifically enumerated in § 522(c)(1)-(3). Section 522(c)(2)(A)(i) includes liens which cannot be avoided under subsection (f). In turn, because subsection (f)(1) directs us to look to what the debtor would be entitled to claim under subsection (b) to make this determination, we are back to square one.

The key to this puzzle lies in the interpretation of § 522(b) and its scope. That is, "[w]e must discern the outer limits of a state law's ability to control an exemption's operative characteristics in the bankruptcy universe." *Id.* A brief description of the history of subsection (b) is helpful to that understanding.

### a. Background

Subsection (b) is the result of a compromise between two ideals of federalism. As noted by the Fifth Circuit in *Davis v. Davis*, 170 F.3d 475 (5th Cir.1999):

[e]xemptions are fought over by states'-rights advocates, who value the traditional state legislative prerogative to adjust exemptions to local economic conditions, and by advocates of federal uniformity, who want to raise-or lower exemptions based on conceptions of national equity. Congress allayed the controversy between state and federal advocates by providing in the 1978 Bankruptcy Code that states could opt out of prescribed federal exemptions altogether or could allow their citizens to select either schedule.

*Davis v. Davis*, 170 F.3d at 478. *See generally, Matter of Sullivan*, 680 F.2d 1131, 1133–34 (7th Cir.1982) (describing the divide between "true uniformity" and "geographic uniformity" in exemptions under the Bankruptcy Code); 9A Am.Jur.2d Bankruptcy § 1256 (1999) (same). The enactment of subsection (b), however, by no means settled this underlying dispute. The interpretation of the scope of this subsection, vis a vis the interplay of state defined exemptions under the Bankruptcy Code, is a subject of much disagreement. *See In re Scott*, 199 B.R. 586, 592–93 (Bankr.E.D.Va.1996) (discussing differing interpretations on the effect of the opt-out provision and cases cited therein). The circuits have divided along two lines.

Some courts have held that because Congress has delegated authority to the states to define exemptions under § 522(b), the states have full authority to supplement bankruptcy law with respect to exemptions. Under this view, a state is

free to expand or restrict exemptions regardless of whether they conflict with the Code. There is no preemption issue involved, according to these courts, because Congress has delegated full authority for the states to legislate in this area. *See, e.g., Davis,* 170 F.3d at 482 ("Congress allowed states to define the existence and limits of exemptions" so the state is free to "supplement bankruptcy law with respect to exemptions."); *Granger v. Watson,* 754 F.2d 1490, 1492 (9th Cir.1985) (stating that an opt-out state "has considerable freedom in creating exemptions and eligibility requirements for those exemptions."); *Clark v. Chicago Mun. Credit Union,* 119 F.3d 540, 544 (7th Cir.1997) ("Because Illinois has opted out of federal exemptions, the Illinois scheme of exemptions is allowed to be 'quite inconsistent with the general goals of the federal Bankruptcy Code.' "); *In re Duda,* 182 B.R. 662, 670–71 (Bankr. D.Conn.1995) (holding that the debtor was not entitled to claim a homestead exemption because Connecticut law defined the homestead statute so as to preclude preexisting liens).

Other courts have held that the states may define "the nature and amount" of exemptions but cannot supplement the provisions of the Bankruptcy Code. *See, e.g., In re Whalen–Griffin,* 206 B.R. 277, 282 (Bankr.D.Mass.1997) (citing to *In re Scott,* 199 B.R. 586, 593 (Bankr.E.D.Va. 1996)). Under this view, § 522(b) merely incorporates the state exemption list by reference. *See, e.g., In re Bartlett,* 168 B.R. 488, 494 (Bankr.D.N.H.1994) (stating that states "may [define] their own exemptions, but this is simply an incorporation by reference by Congress."). The states' ability to opt-out of the Code merely extends to the list of exemptions enumerated in § 522(d). *In re Scott,* 199 B.R. at 591 ("While it is clear that Congress in § 522(b)(1) intended to defer to the states in determining what property could be claimed exempt, Congress did not thereby permit the states to 'opt out' of other exemption-related provisions of the Bankruptcy Code."); *In re Thacker,* 5 B.R. 592, 594 (Bankr.W.D.Va.1980) (stating that § 522(b)(1) opt out refers only to the federal exemptions under § 522(d), not § 522 entirely); *In re Williams,* 225 B.R. 759, 762 (Bankr.D.Nev.1998) ("Whether a lien 'impairs' an exemption may be determined in every case by simply applying the formula set forth in § 522(f)(2) regardless of the limitations on the exemptions contemplated by state law."). Accordingly, insofar as a state law limiting exemptions conflicts with provisions in the Code, it is preempted and inapplicable in a bankruptcy case. *In re Richardson,* 224 B.R. 804, 808 (Bankr.N.D.Okla.1998) ("While federal law permits states to select the property that is exemptible, federal law exclusively governs the field of lien avoidance thereby preempting state law that limits the scope of its exemptions."). This is the view espoused by the First Circuit.

### b. The Law in the First Circuit

In *Weinstein,* the First Circuit resolved a split within the District of Massachusetts on the question of whether the Bankruptcy Code preempts the Massachusetts homestead statute's exception for preexisting debts. The court held that M.G.L.A. c. 188, §§ 1 and 5 were preempted to the extent they allow "exempt property to be liable for debts other than those expressly enumerated in § 522(c)(1)-(3)." *Weinstein,* 164 F.3d at 683 (quoting *In re Whalen–Griffin,* 206 B.R. at 291–92). The court cited to *Owen v. Owen,* in which the Supreme Court stated that "[w]e have no basis for pronouncing [§ 522(b)'s] opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." *Owen,* 500 U.S. at 313, 111 S.Ct. 1833. Following the

*Owen* rationale, the First Circuit rejected an expansive reading of § 522(b). The court determined that:

> ... Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. Yet, such deference does not warrant the conclusion that the "property exempted" in section 522(c) must be defined by first applying all the built-in exceptions to the state exemption scheme.

*Weinstein*, 164 F.3d at 683. *See also, In re Boucher*, 203 B.R. 10, 12–13 (Bankr. D.Mass.1996) (stating that Congress "expressed no deference for debts protected by state law from the state's exemptions....").

In reaching this conclusion, the court cited to *In re Whalen–Griffin* and *In re Leicht* with approval. These two decisions rejected the theory espoused by this Court in *In re Fracasso*, 210 B.R. 221 (Bankr. D.Mass.1997) and *In re Van Rye*, 179 B.R. 375 (Bankr.D.Mass.1995). In *Fracasso* and *Van Rye*, this Court adopted a broad interpretation of the scope of § 522(b)'s opt-out provision. ˙ *See In re Fracasso*, 210 B.R. at 226 ("nothing in the legislative history [of § 522] suggests that the states are precluded from excepting certain debts in defining their exemptions."). In adopting the *Whalen–Griffin* and *Leicht* approach, the First Circuit rejected the theory that a court must first apply all of a state's limitations before making a determination of what property is exempt for purposes of §§ 522(b) and (c). Thus, *Weinstein* rejected the view that preexisting debts must be subtracted from the equity in the debtor's homestead estate before the determination of "exempt property" under § 522(b). *Weinstein*, 164 F.3d at 683.

In *Leicht* and *Whalen–Griffin*, Judge Haines and Judge Feeney, respectively, further defined the scope of § 522(b) and the operation of state exemptions under bankruptcy law as adopted by *Weinstein*. *Leicht* concluded that although Congress left it to the states to define the "category and content" of exemptions, it defined the "operative effect of exemptions in bankruptcy through §§ 522(c) and (f)." *In re Leicht*, 222 B.R. at 677. *Accord, In re Bartlett*, 168 B.R. at 498 ("[T]he effect of exemptions and the implementation of § 522(f)(1) avoidance powers will be determined in terms of the federal purposes involved notwithstanding the results that would otherwise be obtained ˙ if no bankruptcy had ensued.").

█ Thus, state defined exemptions are merely the backdrop upon which "federal principles operate to render results consistent with bankruptcy policy (results often contrary to state law)." *In re Leicht*, 222 B.R. at 680–81. *Accord, Sanders*, 39 F.3d at 260 ("Although bankruptcy courts defer to state law when determining the amount of the allowable state homestead exemption, section 522(f) still controls the availability of lien avoidance."); *Tower Loan of Miss., Inc. v. Maddox*, 15 F.3d 1347 (5th Cir.1994) ("States may not pass or enforce laws to interfere with or complement the Bankruptcy Code."); *In re Richardson*, 224 B.R. at 807 ("Impairment of an exemption is a concept embodied in § 522(f) of the Bankruptcy Code, and therefore its meaning is determined by analyzing the policies underlying bankruptcy law rather than state exemption law."); *In re Conyers*, 129 B.R. 470, 472 (Bankr.E.D.Ky. 1991) ("The determination of the types of debts that remain collectible after bankruptcy from exempt property is controlled by federal rather than state law."). In practical application, this means that "states can determine the nature and

amount of property that can be exempted, but not the types of debts to which the exemption applies." *Id.* at 678; *Whalen–Griffin,* 206 B.R. at 282 (citing to *In re Conyers,* 129 B.R. at 472); *In re Stewart,* 246 B.R. 134, 139 (Bankr.D.N.H.2000) (same). This approach is commensurate with § 522(b)'s goal of balancing the state's interest in defining exemptions according to the needs and conditions of the locality, and the Code's "fresh-start" policy and uniformity. *In re Leicht,* 222 B.R. at 677. "[S]tate exemptions were retained when the Bankruptcy Code was enacted 'so that *exemption levels* could be set at a level commensurate with the standard of living in various parts of the country.'" *In re Scott,* 199 B.R. at 592–93.

▮ *Weinstein,* therefore, carves out two distinct and separate spheres within which federal and state laws operate under the Bankruptcy Code. Congress has delegated a limited subset of the federal sphere of power in allowing states to define the nature and amount of exemptions. Federal law trumps state law where it conflicts with policies of the federal law or where state law steps outside the delineated limits of the allotted subset of state law. This approach comports with the fact that "Congress has plenary power to enact uniform federal bankruptcy laws." *Weinstein,* 164 F.3d at 682–83.

### 2. The Amount of the Debtors' Homestead Exemption

▮ Cetiner argues that the exception carved out by Section 3's subordinating provision falls under the permissive sphere of state law as delegated by Congress under § 522(b), and not under the exclusive sphere of federal bankruptcy law. No court in the District of Massachusetts has expressly addressed the question of whether *Weinstein's* holding preempting state law exclusions for preexisting debts extends to the state's ability to set exceptions for the amount of exemptions. Cetiner claims that it does not. He cites to language in *Whalen–Griffin* to support his argument that although states may not add to the type of debts enumerated in § 522(c), bankruptcy courts must uphold the limitations the state sets on the amount of exemptions.

In *Whalen–Griffin,* Judge Feeney noted that "[a]lthough a state can place *limits on the dollar amount* of a homestead exemption, the state cannot define the exemption with reference to obligations not identified in § 522(c)." *In re Whalen–Griffin,* 206 B.R. at 291–92 (emphasis added). Cetiner interprets this language to mean that unlike *categories* of debts for which exempt property may be liable under § 522(c), the determination of the *amount* of exemptions is wholly outside the sphere of federal law when the state exemption scheme is at play. According to Cetiner, this extends to the exceptions to the amount of the exemptions. Cetiner interprets "limits" in the above quoted language to include exceptions or restrictions, as opposed to merely a ceiling on the dollar amount of an exemption.

▮ For purposes of §§ 522(c) and (f), this Court believes that Cetiner advocates a distinction without a difference. In light of the clearly established precedent in this Circuit, this Court believes that Cetiner has misinterpreted Judge Feeney's language in *Whalen–Griffin.* In application, Section 3's subordinating clause has the same effect as the other provisions of the Homestead Statute previously invalidated by the *Weinstein* holding. Whether the state excludes a category of debt from exemption protection altogether or whether it carves out an exception for the applicable dollar amount for the same category of debt is an irrelevant distinction given the overarching principle that conflicting

state exemption limitations have no effect under the Bankruptcy Code. Either method of carving out exceptions ultimately reduces the debtor's homestead estate because under either method, this Court must first apply the statute's exceptions before determining what property is exempt. Under the Bankruptcy Code, both methods must fail because § 522(b)(2) does not incorporate all of a state's built-in limitations on exemptions. Rather, the state exemption scheme is merely the platform upon which federal policies operate.

Accordingly, in determining what property is exempt under §§ 522(b)(2) and (c), this Court must look to the law in effect at the time of the bankruptcy filing notwithstanding the limitations set forth in the Homestead Statute. This is a principle that applies universally throughout § 522, irrespective of whether the exemption statute's exceptions apply to a category of debt as a whole or to the dollar amount of an exemption as applied to a particular category of debt.[14]

Giving effect to Section 3's limitation would be to contradict *Weinstein's* clear holding. Section 522(c) nowhere provides that preexisting debts or liens receive special protection under the Code. Accordingly, Section 3's subordinating clause conflicts with § 522(c) and has no effect in this bankruptcy proceeding. The applicable exemption amount in this case, therefore, is the amount in effect at the time the Debtors filed for relief, namely $300,000.

## C. Retroactive Application of The Exemption Increase and the Fifth Amendment Takings Clause

■ Finally, Cetiner argues that a retroactive application of the exemption increase constitutes a taking of property under the Fifth Amendment of the Constitution. Following the reasoning of *Weinstein,* this Court holds otherwise.

Indeed, courts are divided on the question of whether increases in the amount of homestead exemptions must be applied prospectively in order to comport with the constitutional mandate of the Fifth Amendment.[15] However, this Court be-

---

**14.** In reaching this conclusion, the Court is mindful of case law in other circuits that have held that state exemption statutes that preclude application of an increase in the dollar amount of the exemption to preexisting debts must be given effect under § 522(b)(2). In *First National Bank of Mobile v. Norris,* 701 F.2d 902 (11th Cir.1983), for instance, the Eleventh Circuit upheld the Alabama homestead statute's limit on the application of an increase in the amount of the exemption, stating that "[n]othing in [§ 522] suggests that the state cannot determine exemptions according to the date debts were incurred, i.e., allow different amounts for the exemption fixed by the date of debts." *Norris,* 701 F.2d at 905. *See also, In re Eipp,* 66 B.R. 1, 2 (Bankr.N.D.N.Y.1984) (holding that the New York homestead statute increasing the amount of the exemption but excepting the increase to debts contracted prior to the effect of the amendment applies in a bankruptcy proceeding); *In re Puff 'N Stuff of Winter Park, Inc.,* 183 B.R. 959, 962 (Bankr.M.D.Fla.

1995) ("[E]quity suggests that debtors who incurred debts prior to [the exemption increase] should be bound by the exemptions in place at that time."); *In re Murillo,* 4 B.R. 612, 614 (Bankr.C.D.Cal.1980) (same). We are bound, however, by *Weinstein's* clear holding.

**15.** *See, e.g., In re Bartlett,* 168 B.R. at 499 (upholding application of the higher exemption amount and reasoning that the legitimate public purpose of providing a debtor with a fresh start did not substantially impair the parties' contractual relationship); *In re Larson,* 260 B.R. 174, 202–03 (Bankr.D.Colo. 2001) (noting circuit split on the issue and holding that retroactive application of increase in the amount of Colorado's homestead statute constitutes a "mere consequential incidence of a valid state regulation rather than rising to the level of a taking requiring just compensation."); *In re Punke,* 68 B.R. 936 (Bankr.N.D.Iowa 1987) (holding that retroactive application of the increase in the

lieves that the relevant question is not whether the exemptions under state law have changed since the date that the lien arose (particularly since those exemptions are circumscribed in any event by the limitations of § 522(c)), but whether the avoidance provisions of the Bankruptcy Code, i.e., § 522(f), changed after that date and is sought to be applied retroactively. *Weinstein* focused not on the underlying exemption, but on § 522(f). The First Circuit held that because the creditor's lien in that case arose after § 522(f)'s enactment in 1979, there was no retroactive application of a lien avoidance provision. *Id.; Leicht,* 222 B.R. at 682. Noting that in *United States v. Security Industrial Bank,* 459 U.S. 70, 74–82, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court strongly suggested that prospective application of § 522(f)'s lien avoidance provision did not constitute a taking, the First Circuit concluded that avoidance of the creditor's lien in that case did not violate the Fifth Amendment. *Id.* at 685; *Leicht* at 682–83 ("[W]e take *Security Inds. Bank's* teaching as a strong signal, though short of an express holding, that prospective application of § 522(f)'s lien avoidance provisions does not offend the Fifth Amendment.").

As in *Leicht* and *Weinstein,* Cetiner's lien also arose after § 522(f)'s effective date. Cetiner's lien attached on June 14, 2000, twenty-one years after § 522(f)'s passage. The effect of lien avoidance in this case was prospective, not retroactive.

When Cetiner's lien arose, he knew or should have known that, in the event of the Debtors' bankruptcy, § 522(f) might impact upon his lien and that the underlying state court exemptions might be adjusted depending upon the date of the filing of the bankruptcy case. As noted by other courts, it is reasonable to expect exemption rights to be periodically adjusted to reflect current economic conditions. *In re Larson,* 260 B.R. at 199. *See also, In re Bartlett,* 168 B.R. at 496 ("Property right[s] attaching to a creditor is subject to the vagaries of the economy which—while it might provide increasing property value of the collateral in question—likewise predictably would produce legislative response to adjust the homestead exemption amount to correspond with such increased property values."); *In re Punke,* 68 B.R. at 943 (stating that the effect of an increase in the exemption amount stems from the state legislature's attempt to align exemptions with modern economic reality); *In re Johnson,* 69 B.R. at 993 (same). This result "is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors." *Leicht,* 222 B.R. at 683–84 (quoting *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 189, 22 S.Ct. 857, 46 L.Ed. 1113 (1902)). Accordingly, Cetiner's property rights under the Fifth Amend-

---

amount of the homestead exemption is the product of a "public program adjusting the benefits and burdens of economic life to promote the common good" and therefore no taking is involved); *In re Johnson,* 69 B.R. 988, 993 (Bankr.D.Minn.1987) (same). *But see, In re Mayer,* 156 B.R. 54, 59 (Bankr. S.D.Cal.1993) (holding that a creditor's judicial lien creates a vested right which cannot be impaired through retroactive application of an increase in the amount of a statutory

exemption); *In re Fossum,* 59 B.R. 820, 823 (Bankr.D.Minn.1986) (holding that Minnesota statutory amendment increasing the value of exemptions for tools of trade must be applied prospectively only so as to avoid violation of the contracts clause); *Bassin v. Stopher,* 637 F.2d 668, 670 (9th Cir.1980) (holding that the amount in effect at the time debts arise must be applied in order to avoid unconstitutional impairment of a creditor's contract rights).

ment are not infringed upon by application of the increased homestead amount.

### III.  Conclusion

For the foregoing reasons, the Court concludes that the applicable amount of the Debtors' homestead exemption, for the purpose of applying § 522(f) is $300,000. The Court will schedule such further hearings as may be necessary to determine the value of the Residence in order to determine the extent, if any, by which the Cetiner's lien should be avoided, employing the formula mandated by 522(f)(2)(A).

A separate order in conformity with this Memorandum of Decision shall enter in conjunction with this decision.